AL:KMT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – –X

ABRAHAM IRAHETA,

                  Petitioner,

     - against -

UNITED STATES OF AMERICA,

                 Respondent.

– – – – – – – – – – – – – – – – – –X

                            11-CR-0857 (WFK)

## GOVERNMENT'S RESPONSE IN OPPOSITION
## TO THE PETITION TO VACATE, SET ASIDE OR
## CORRECT A SENTENCE UNDER 28 U.S.C. § 2255

                          KELLY T. CURRIE
                          ACTING UNITED STATES ATTORNEY
                          Eastern District of New York
                          271 Cadman Plaza East
                          Brooklyn, New York 11201

Kevin Trowel
Assistant U.S. Attorney
     (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to Abraham Iraheta's (the "Petitioner") pro se petition, pursuant to 28 U.S.C. § 2255 (the "Petition" or "Pet."), to vacate, set aside, or correct his sentence based on the alleged ineffective assistance of his former counsel, Joel Stein, Esq.  Iraheta alleges that defense counsel erroneously advised him that he would receive a sentence of no more than 135 months' imprisonment, and that he was induced to plead guilty based on this erroneous advice.  Iraheta was sentenced by the Court principally to a term of 188 months' imprisonment.  Iraheta also challenges the Court's application of an obstruction of justice enhancement under United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 3C1.1.

For the reasons set forth below, the Court should summarily dismiss the Petition because Iraheta was not provided ineffective assistance and cannot establish that he was prejudiced by counsel's performance.  With respect to the sentencing challenge, he is barred from raising the issue on collateral review and, in any event, the Court did not impose a sentencing enhancement for obstruction of justice.

BACKGROUND

A.     The Offense Conduct

Iraheta is a member of the Flushing "clique," or subset, of the La Mara Salvatrucha ("MS-13") street gang.  Following an investigation by Homeland Security Investigations ("HIS"), Iraheta was indicted by a grand jury in the Eastern District of New York and charged with numerous crimes arising from his membership and participation in MS-13, including racketeering and racketeering conspiracy, with predicate acts of conspiracy

to murder and attempted murder.  He was also charged with conspiracy to murder in aid of racketeering, attempted murder in aid of racketeering, unlawful use of a firearm, and other charges.  (<u>See</u> <u>generally</u> Presentence Investigation Report ("PSR") ¶¶ 6-33.)  Iraheta and nine other members of MS-13 were arrested on January 5, 2012 pursuant to an arrest warrant issued in the Eastern District of New York after the aforementioned indictment was returned.

      B.     <u>Plea Negotiations</u>

      By August of 2013, seven of the ten defendants had pleaded guilty and only three remained – Iraheta, Jose Celestino Guillen-Rivas and Jose Barrera.  In August and September of 2013, the government and counsel for the three remaining defendants engaged in plea negotiations.  The government made a first plea offer to Iraheta, Guillen-Rivas and Barrera on August 20, 2013.  (Ex. 1 (August 20, 2013 Plea Offer).)  In the August 20, 2013 offer, the government offered Iraheta a plea to Count One – Racketeering in violation of 18 U.S.C. § 1962(c), with predicate acts of conspiracy to murder (Racketeering Acts One and Four) and attempted murder (Racketeering Act Two) – and Count Five, unlawful use of a firearm in violation of 18 U.S.C. § 924(c).  The government's offer to Iraheta was conditioned on all three remaining defendants pleading guilty on or before September 13, 2013.  If that condition was met, the government agreed to move for a one-level reduction in the applicable Guidelines level for a global resolution under § 5K2.0, which, the government estimated, would result in an adjusted offense level of 34, and, assuming the defendant was in Criminal History Category I, a corresponding range of imprisonment of 151-188 months for the racketeering charge.  (<u>Id.</u> ¶ 2.)  Under the terms of this offer, Iraheta would also have been subject to a mandatory consecutive sentence of 60 months for Count Five, resulting in an effective Guidelines range of 211-248 months' imprisonment.  The offer provided that

Iraheta could not appeal his sentence if the Court imposed a term of imprisonment of 295 months or below.  (Id. ¶ 4.) Iraheta rejected the government's offer.

The government made a second plea offer to Iraheta on September 13, 2013. (Ex. 2 (September 13, 2013 plea offer).)  In this offer, the government offered Iraheta a plea to just Count One – Racketeering in violation of 18 U.S.C. § 1962(c) – with predicate acts of conspiracy to murder in Racketeering Acts One and Four.  (Id. ¶ 2.)  The government's offer to Iraheta was again conditioned on all three remaining defendants pleading guilty.  (Id. ¶ 7.) If that condition was met, the government agreed to move for a one-level reduction in the applicable Guidelines level for a global resolution under § 5K2.0, which, the government estimated, would result in an adjusted offense level of 33, and, assuming the defendant was in Criminal History Category I , a corresponding range of imprisonment of 135-168 months. (Id. ¶ 2.)  The agreement provided that Iraheta could not appeal his sentence if the Court imposed a term of imprisonment of 188 months or below.  (Id. ¶ 4.)  Iraheta indicated

through counsel that he intended to accept the government's second plea offer and a plea hearing was set for September 16, 2013.[1]

C.     Guilty Plea

Iraheta pleaded guilty pursuant to the government's September 13, 2013 plea offer on September 16, 2013.  (Dkt. No. 185.)  At the guilty plea, the Court read the plea agreement into the record, including the government's estimated Guidelines calculation of 135-168 months' imprisonment and the appellate waiver for any sentence of 188 months' imprisonment or below.  (Ex. 3 (Sept. 16, 2013 Transcript) at 13-15.)  The defendant told the Court he was satisfied with the assistance he had received from his lawyer (id. at 25) and he acknowledged that he had reviewed the plea agreement with his lawyer and that he understood it (id. at 29-30).  The Court informed Iraheta that, at sentencing, the Court would calculate the applicable Guidelines range, but that the Court would not be bound by that range.  (Id. at 32.)  The defendant agreed that he had not been induced to plead guilty by any

---

[1] The agreement between the government and Iraheta also provides that Iraheta "agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 188 months or below."  (Ex. 2 ¶ 4.)  As the Second Circuit has held, however, "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." Frederick v. Warden, Lewisburg Correctional Facility, 308 F.3d 192, 195-96 (2d Cir. 2002) (citing Jones v. United States, 167 F.3d 1142, 1145 (7th Cir.1999), approvingly for proposition that "waiver of right to file a Section 2255 motion is unenforceable where defendant claims ineffective assistance of counsel with respect to the agreement which effected the waiver").  Since Iraheta's plea agreement was executed, the United States Attorney's Office for the Eastern District of New York (the "Office") has revised its standard plea offer language to provide that "[n]othing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum."  In light of Frederick and related cases and the recent revision to the Office's standard plea agreement language, the government does not seek to enforce the § 2255 waiver against Iraheta as to his ineffective assistance of counsel claim.

other deal or agreement other than the plea agreement and that he had not been promised any particular sentence (id. at 30), and he then entered a guilty plea to Count One and allocuted to Racketeering Acts One and Four (id. at 34-43).  The Court found that there was a factual basis for the defendant's guilty plea to Count One, and accepted the plea.  (Id. at 43.)

D.     Sentencing Hearing

Prior to sentencing, the Probation Department prepared the PSR, which was disclosed on April 11, 2014.  The Probation Department initially calculated Iraheta's adjusted Guidelines level as 37 and his Criminal History Category as I, which resulted in an advisory Guidelines range of 210 to 240 months' imprisonment.  (PSR ¶ 127.)  The Probation Department's Guidelines calculation differed from the government's estimate in the plea agreement in the following ways:  (1) for Racketeering Act One, the Probation Department did not include a two-level enhancement for serious bodily injury under § 2A2.1(b)(1)(B); (2) for both Racketeering Acts One and Four, the Probation Department included a two-level enhancement for obstruction of justice under § 3C1.1, based on the affidavit submitted by the defendant in connection with his motion to suppress certain evidence (PSR ¶¶ 52, 65, 71); (3) as a result of the obstruction-of-justice enhancement, the Probation Department did not include a three-level reduction for acceptance of responsibility under § 3E1.1; and (4) the Probation Department did not include the one-level reduction for a global resolution under § 5K2.0.[2]  The net result of these differences was that the adjusted

---

[2]  The PSR noted in footnote 2 that the parties had agreed to the one-level reduction if all three defendants pleaded guilty by the specified date, but the Probation Department did not include the one-level reduction in its Guidelines calculation and instead included it as a "factor[] that may warrant departure."  (PSR ¶¶ 90 n.2, 141.)

Guidelines level in the PSR was four levels higher and 75 months' longer at the bottom end of the ranges.

Following disclosure of the PSR, on April 25, 2014, the defendant, through counsel, objected to the Probation Department's Guidelines calculation, specifically challenging the obstruction-of-justice enhancement and the disallowance of the three-level reduction for acceptance of responsibility.  (Ex. 4 (Defendant's PSR objection letter).)  By addendum dated June 16, 2014 ("PSR Add."), the Probation Department withdrew the obstruction-of-justice enhancement and included the three-level reduction for acceptance of responsibility.  The addendum included a revised Guidelines estimate, with an adjusted Guidelines level of 32, and a resulting Guidelines imprisonment range of 121 to 151 months' imprisonment.  (PSR Add. ¶ 134.)   The Probation Department noted that its calculation did not include the one-level reduction agreed to by the parties for a global resolution.  (Id. ¶ 141.)  With that additional one-level reduction, the defendant's adjusted Guidelines level was 31, with a resulting Guidelines imprisonment range of 108 to 135 months' imprisonment.  (Id.)

Prior to sentencing, the parties both submitted sentencing memoranda.  The defendant filed a sentencing memorandum on July 17, 2014, in which the defendant, through counsel, agreed with the Guidelines calculation set forth in the PSR addendum.  (Dkt. No. 256.)  The defendant requested that the Court impose a "nonguidelines sentence" below the advisory range of 108 to 135 months' imprisonment.  (Id.)  The government filed a sentencing memorandum on July 25, 2014 in which it argued that a sentence within the applicable Guidelines range of 108 to 135 months was sufficient but not greater than necessary to serve the purposes of 18 U.S.C. § 3553(a).  (Dkt. No. 258 at 2-3.)

The parties appeared before Your Honor for sentencing on July 24, 2014.  (See Ex. 5 (July 24, 2014 Transcript).)  At the sentencing hearing, the Court adopted the factual findings set forth in the PSR (id. at 21) and the Guidelines calculation set forth in the addendum to the PSR (id. at 6).  The Court explained that, with the one-level reduction for the global resolution, the defendant's adjusted Guidelines offense level would be 31, with a corresponding range of imprisonment of 108 to 135 months.  (Id.)  The Guidelines calculation set forth in the PSR addendum and adopted by the Court did not include a two-level enhancement for obstruction of justice.  Although the Court did not impose a two-level enhancement for obstruction of justice, it did note that, in the Court's view, Iraheta took "steps to obstruct justice by making false statements in [his] description of [his] relationship to [his] machete, and in describing the arrest that you were subjected to by the officers."  (Id. at 18.)  The Court indicated that it was considered the 18 U.S.C. § 3553(a) factors and imposed a sentence of 188 months' imprisonment.  (Id. at 19.)

E.    Habeas Petition

On April 20, 2015, the Petitioner filed the instant habeas petition pursuant to 18 U.S.C. § 2255.  (Dkt. 271.)   The Petitioner makes two arguments in his motion.  First, he asserts that he received ineffective assistance of counsel in violation of the Sixth Amendment when his counsel "made clear" to Iraheta that his sentence would be within the range of 108 to 135 months' imprisonment.  (Pet. at 3.)  Iraheta asserts that he was incorrectly advised by counsel that his sentence "would be no more than 135 months" and that, based on this advice, he entered a plea of guilty.  (Id.)  Iraheta asserts that he was prejudiced by his counsel's erroneous advice because, had he been correctly advised by counsel, he would have "instructed counsel to seek an 11(c)(1)(C) binding plea agreement."  (Id. at 8.)   Second,

7

he asserts that his Fifth and Sixth Amendment rights were violated because the Court "engaged in judicial fact finding that . . . Iraheta gave false testimony at his suppression hearing and increased his adjusted offense level absence sufficient evidence."  (Pet. at 8.)

        As described below, Iraheta's claims are without merit and should be dismissed without an evidentiary hearing.

<u>ARGUMENT</u>

        Iraheta's claim that his counsel advised him that he would receive a sentence of not more than 135 months' imprisonment is belied by the record and directly contradicted by a sworn affidavit from his experienced counsel, who was appointed pursuant to the Criminal Justice Act (Ex. 6 (affidavit of Joel Stein, Esq.).)  The Court may deny Iraheta's motion without an evidentiary hearing based on these sources.  In any event, Iraheta also fails to show that he was prejudiced by this allegedly erroneous advice, and the petition should also be dismissed for that reason.

        Iraheta's claim that the Court engaged in improper fact finding related to the affidavit he submitted with his motion suppress is barred by the terms of his plea agreement and not cognizable in a habeas petition.  In any event, the claim is baseless and contradicted by the sentencing record.  The Probation Department withdrew the two-level enhancement for obstruction of justice and the Court adopted a Guidelines calculation without the enhancement.

        For these reasons, Iraheta's petition should be dismissed in its entirety.

A.      The *Strickland* Standard for Determining Ineffective Assistance of Counsel

   To prevail on a claim of ineffective assistance of counsel, a petitioner must: (1) demonstrate that counsel's performance "fell below an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice" from the alleged dereliction in counsel's performance.  Strickland v. Washington, 466 U.S. 668, 687-88, 693-94 (1984); accord United States v. De La Pava, 268 F.3d 157, 163 (2d Cir. 2001).

   With respect to the first prong of this analysis, a reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'"  United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland v. Washington, 466 U.S. at 689).  As applied to guilty pleas, the first prong of the Strickland test means that "a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.'"  Strickland, 466 U.S. at 687 (citation omitted).

   With respect to the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  To show prejudice in the guilty plea context, a petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," Hill v. Lockhart,

474 U.S. 52, 59 (1985), and "a decision to reject the plea bargain would have been rational

under the circumstances," Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

The petitioner bears the burden of establishing both of these elements by a

preponderance of the evidence, Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001)

(discussing the petitioner's burden under Section 2255), and dismissal of the petition is

appropriate if the petitioner is unable to raise "detailed and controverted issues of fact," Cruz

v. United States, 05 CV 6477 (NRB), 2007 WL 541698, at *3-4 (S.D.N.Y. Feb. 20, 2007)

(citing Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977)).  As the Second Circuit

has explained, the Court need not conduct an evidentiary hearing where the record is

sufficient to deny the petition:

> It is within the district court's discretion to determine whether a
> hearing is warranted.  Among the wealth of materials available
> to the district court at its direction are the trial record, letters,
> documents, exhibits, affidavits and written interrogatories.
> After expanding the record, the district court then decides if an
> evidentiary hearing also is required.  Our precedent disapproves
> of summary dismissal of petitions where factual issues exist [ ],
> but it permits a "middle road" of deciding disputed facts on the
> basis of written submissions.

Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) (citations omitted); accord, e.g.,

United States v. Howard, 443 F. App'x 596, 600 (2d Cir. 2011); Raysor v. United States, 647

F.3d 491, 494 (2d Cir. 2011); Campusano v. United States, 442 F.3d 770, 776 (2d Cir. 2006)

("As noted in Chang v. United States and Pham v. United States, the district court has

discretion to determine if a testimonial hearing will be conducted." (citations omitted));

Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) ("At the request of the court, the

record was supplemented by a detailed affidavit from trial counsel credibly describing the

circumstances concerning [petitioner's § 2255 claim].  We believe that with that submission

the record was sufficient to support dismissal of the petition.").  Indeed, courts in this circuit faced with a petitioner's bald claims regarding ineffective assistance have routinely denied habeas petitions without a hearing when the defense counsel submits an affidavit credibly contradicting the petitioner's claims.  See, e.g., Chang, 250 F.3d at 85 (affirming district court decision summarily dismissing petition without hearing because "with that submission [counsel affidavit] the record was sufficient to support dismissal"); Riggi v. United States, 04 CV 7852 (JSR) (GWG), 2007 WL 1933934, at *8 (S.D.N.Y. July 5, 2007) (denying petition without hearing because petitioner's statement, made "only in the most conclusory terms that he instructed his counsel to file a notice of appeal[,]" cannot overcome the defense attorney's affidavit to the contrary); Cruz, 2007 WL 541698, at *3-4 (denying petition without hearing when attorney affidavit contradicts bald claim by petitioner regarding instruction to file appeal).

Moreover, even in the absence of an affidavit by defense counsel, courts in this district have found no need to convene an evidentiary hearing where "all of the circumstances of the case impeach [petitioner's] claim." Reese-Thomas v. United States, 05 CV 2406 (JG), 2007 WL 4441056, at *8 (E.D.N.Y. Dec. 18, 2007); see also Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) (holding that "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding"); Reyes v. United States, No. 07 CV 1614 (JG), 2007 WL 2973591, at *8 (E.D.N.Y. Oct. 10, 2007) (denying petition without contradictory affidavit because "I find [petitioner's] 'generic' claims to be 'self-serving and improbable,' and do not credit them generally").

B.      Petitioner's Claim is Refuted by the Record and Defense Counsel's Affidavit

Petitioner's ineffective assistance of counsel claim is plainly refuted by the record, and he cannot satisfy either prong of the Strickland test.  First, the sentencing record confirms that defense counsel's performance was not deficient, and the Petitioner did not plead guilty in reliance on a promise from counsel that he would receive a sentence of 135 months' imprisonment or less.  Indeed, the Court confirmed as much at the plea hearing by asking, "Other than the written plea agreement with the government which is in evidence, has anyone made you any promise that caused you to plead guilty?"  (Ex. 3 at 34.)  The Petitioner answered "no."  (Id.)  The Court then asked, "Has anyone made you any promise about the sentence you will receive from this Court?"  (Id.)  The Petitioner again answered "no."[3]  (Id.)

The Court may reject the Petitioner's claim based solely on these portions of the plea hearing transcript.  This is so because "the district court [is] entitled to rely upon the defendant's sworn statements, made in open court . . . that he understood the consequences of his plea, had discussed the plea with his attorney, . . . understood that he was waiving his right to appeal a sentence below [the agreed upon range], and had been made no promises

---

[3] The plea agreement, which the Petitioner reviewed with his counsel, understood and signed, also refutes his argument.  (Ex. 3 at 29-30.)  Contrary to the defendant's assertion that the government also agreed that he would not receive a sentence of more than 135 months (Pet. at 6), in paragraph eight of the agreement, the defendant agreed that he had no agreements with the government other than the plea agreement.  (Ex. 2 ¶ 8 (confirming that "no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement. . . .").)  Iraheta also agreed and understood that the Court would consider the Guidelines at sentencing, but was not bound by them and would rely on a number of factors "to arrive at an appropriate sentence in this case."  (Id. ¶ 2.)  At the plea hearing, after the defendant signed the plea agreement with the government, the Court read the entire agreement to the defendant to be certain he understood it.  (Ex. 3 at 11-21.)

except those contained in the plea agreement."  United States v. Hernandez, 242 F.3d 110,

112 (2d Cir. 2001)  (per curiam) (relying on plea colloquy to reject claim, made on direct

appeal, that defendant's plea was not voluntarily and knowing because it was induced by

misinformation provided by defense counsel about the sentence defendant would receive);

see also Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("For the representations of the

defendant, his lawyer, and the prosecutor at such a [plea] hearing, as well as any findings

made by the judge accepting the plea, constitute a formidable barrier in any subsequent

collateral proceedings.  Solemn declarations in open court carry a strong presumption of

verity.  The subsequent presentation of conclusory allegations unsupported by specifics is

subject to summary dismissal, as are contentions that in the face of the record are wholly

incredible.").  In light of Iraheta's sworn statement "during the plea colloquy that he had not

been promised anything with regard to his guilty plea," his petition should be dismissed as

"baseless."  Goldberg v. United States, 1996 WL 10104, 100 F.3d 941, at *1 (2d Cir. 1996);

see also United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) (explaining that

appellant's claim that his attorney coerced him into accepting a guilty plea was without merit

because "statements at a plea allocution carry a strong presumption of veracity" and "his

unequivocal admissions under oath contradict his unsupported assertions of pressure"

(citations omitted)); Jaafar v. United States, 12 CV 3321 (DLI), 2015 WL 893571, at *8

(E.D.N.Y. Mar. 2, 2015) (rejecting habeas claim that counsel promised particular sentence as

"baseless" in light of sentencing record).

    This conclusion is buttressed by the affidavit from defense counsel attached as

Exhibit 6.  In the affidavit, defense counsel avers that, in discussing the plea offers with

Iraheta, he "discussed the application of the United States Sentencing Guidelines generally

and the Guidelines calculations set forth in the pela offers." (Ex. 6 ¶ 3.) He advised Iraheta

that, "if he pleaded guilty, at sentencing the sentencing judge would calculate the Guidelines

and would be required to consider" them, but "would not be required to impose a sentence

within the applicable Guidelines range." (Id.) He also "repeatedly advised [Iraheta] that

only the sentencing judge would determine his sentence and that [he] could not promise

[Iraheta] that he would receive any particular sentence or a sentence within any particular

range." (Id. ¶ 4.) Defense counsel avers that he "did not advise Iraheta that he would receive

any particular sentence or a sentence within a particular range," "did not advise Iraheta that

he would receive a sentence within the range of 108 to 135 months' imprisonment," and "did

not advise Iraheta that he would receive a sentence of 135 months' imprisonment or below."

(Id. ¶ 6.) The Court may rely on this affidavit to reject Iraheta's claim that counsel's

performance was deficient. See, e.g., Monserrate v. United States, 10 CR 965 (CM), 13 CV

8767 (CM), 2014 WL 7179628, at *5 (S.D.N.Y. Dec. 10, 2014) (rejecting habeas claim that

counsel promised particular sentence by reference to plea colloquy and contradictory

affidavit from defense counsel).

   It is equally clear that Iraheta cannot satisfy the "prejudice" prong of

Strickland. First, Iraheta has made no showing of "a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,"

i.e., that the "decision to reject the plea bargain would have been rational under the

circumstances." Dorfman v. United States, 13 CV 4999 (JCF), 99 CR 51 (JCF), 2104 WL

260583, at *5 (S.D.N.Y. Jan. 23, 2014); see also United States v. Horne, 987 F.2d 833, 836

(D.C. Cir. 1993) (denying habeas petition challenging guilty plea on ineffective assistance

grounds in part because defendant "offered nothing to suggest that he would have succeeded

if he had gone to trial"); Holman v. Ebert, 06 CV 3618 (BMC), 2007 WL 4591718, at *5

(E.D.N.Y. Dec. 28, 2007) ("To satisfy the prejudice element of the Strickland test in the

context of a guilty plea, petitioner would have to show that he would have been acquitted or

at least received a shorter sentence after conviction.").   Iraheta can make no such showing

here, where (1) the government had a strong case, including recordings of numerous

telephone calls intercepted pursuant to a Court-authorized wiretap, in which the Petitioner

and his codefendants can be heard conspiring to commit criminal acts, and (2) the plea offer

the Petitioner ultimately accepted did not require him to plead to all the charges in the

indictment, did not require him to plead to the firearms charge in Count Five, which carried a

mandatory consecutive sentence of 60 months, and dramatically reduced his sentencing

exposure.[4]   Under these circumstances, it would have been irrational for Iraheta to refuse the

second plea offer negotiated for him by his counsel and he therefore cannot satisfy

Strickland's "prejudice" prong.[5]   See, e.g., United States v. Pirpich, 594 F. App'x 471, 477

(10th Cir. 2014) (holding defendant could not meet Strickland's second prong because he

"admitted that, had he been permitted to withdraw his guilty plea, he would most likely have

pled guilty again, rather than proceed to trial"); Panuccio v. Kelly, 927 F.2d 106, 109 (2d Cir.

1991) (concluding that prejudice prong was not satisfied where defense would not likely

---

[4] That Iraheta dramatically reduced his sentencing exposure by pleading guilty is apparent from a comparison between the first plea offer and the agreement that the government and Iraheta ultimately entered into.  From the first plea offer to the second, Iraheta's maximum sentencing exposure was reduced from 25 years to 20, his estimated Guidelines range was reduced from 211-248 months' imprisonment to 135-168 months' imprisonment, and his appellate waiver was reduced from 295 months to 188 months. (Compare Ex. 1 with Ex. 2.)  His sentencing exposure would have been even higher had he been convicted following trial.

[5] Iraheta concedes this point, noting that even had he been properly advised, he would still have sought to plead guilty.  (Pet. at 8.)

have succeeded at trial and because plea substantially reduced defendant's sentencing exposure); Boakye v. United States, 09 CV 8217 (RWS), 2010 WL 1645055, at *5-6 (S.D.N.Y. Apr. 22, 2010) (finding prejudice prong was not satisfied because it would not have been rational to reject plea where government had a strong case, based in part on wiretap recordings, and where petitioner "also would have lost the substantial benefit resulting from his plea").

Nor can Iraheta satisfy Strickland's second prong by his speculative and unsupported assertion that, had he been property advised, he "could have instructed counsel to seek an 11(c)(1)(C) binding plea agreement." Stated simply, the Petitioner has not shown and cannot show that there is a "reasonable probability that the prosecution would have been willing to enter into the desired agreement and that it would have been acceptable to the court." United States v. Richards, 567 F. App'x 591, 593 (10th Cir. 2014); see also United States v. Cabrera, 563 F. App'x 861, 863 (2d Cir. 2014) ("'[C]onclusory allegations unsupported by specifics [are] subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.'" (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). "Without any showing that the prosecution was willing to enter plea negotiations [for a Rule 11(c)(1)(C) plea] with [Iraheta's] counsel, or that such plea would have been acceptable to the court, or that the resulting sentence would have been different than that imposed under the Sentencing Guidelines, all that the [Petitioner] urges is speculation, not a reasonable probability that the outcome would have been different. Accordingly, he cannot establish prejudice." United States. v. Boone, 62 F.3d 323, 327 (10th Cir. 1995); see also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim); United

States v. Rondon, 06 CR 326, 10 CV 2928, 2015 WL 1242835, at *13  (M.D. Fla. Mar. 18, 2015) ("[Petitioner] fails to demonstrate prejudice because he can only speculate that the government would have been willing to engage in further negotiations; speculation is insufficient to entitle [petitioner] to federal habeas relief").

For all of these reasons, Iraheta cannot satisfy either prong of Strickland, and his ineffective assistance of counsel petition should therefore be dismissed.

C.      Iraheta Is Barred from Challenging the Court's Application of the Guidelines

Iraheta's is barred from arguing that the Court improperly increased his sentence by imposing an obstruction of justice enhancement under Guideline § 3C1.1 and, accordingly, this aspect of his petition should also be dismissed.  (Pet. at 10.)  First, under the terms of Iraheta's plea agreement, he "agree[d] not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 188 months or below."  (Ex. 2 ¶ 4.)  For reasons stated in footnote 1, above, the Office does not seek to enforce this waiver as to Iraheta's claim of ineffective assistance of counsel, but the waiver plainly applies to this sentencing challenge.  See, e.g., Bossous v. United States, 11 CV 5303 (DLC), 09 CR 978 (DLC), 2012 WL 4435312, at *2-3 (S.D.N.Y. Sept. 26, 2012) (explaining that "[a] defendant's waiver of the right to appeal or collaterally attack a sentence within or below a stipulated guidelines range is presumptively enforceable" except where the "claim relates to advice counsel gave with regard to entering the plea or the process by which the defendant agreed to plead guilty"); see also Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (holding that § 2255 waivers in plea agreements are generally enforceable). Moreover, this challenge to his sentence is one that could have been brought on direct

appeal, but Iraheta knowingly and voluntarily waived his right to appeal any sentence of 188 months' imprisonment or below.  (Ex. 2 ¶ 4.)  The Court should reject Iraheta's attempted end run around the terms of his plea agreement.  Finally, in this claim, Iraheta challenges the Court's application of the Sentencing Guidelines, which is neither a constitutional nor a jurisdictional issue, and is therefore not cognizable in a § 2255 petition absent a "complete miscarriage of justice."  See, e.g., Graziano v. United States, 83 F.3d 587, 590 (2d Cir.1996) (collecting cases and holding that, "[i]nsofar as claims regarding a sentencing court's error in failing to properly apply the Sentencing Guidelines are neither constitutional nor jurisdictional, we join several other circuits in holding that, absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on direct appeal").

For each of these reasons, this aspect of Iraheta's Petition should be dismissed.

D.      The Court Should Not Issue a Certificate of Appealability

If the Court denies Iraheta's Petition, the government respectfully submits that the Court should not issue a certificate of appealability ("COA").  A habeas petitioner may not appeal the denial of a § 2255 petition unless a COA is issued following a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); see, e.g., Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).  For Iraheta, a COA could issue only if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack, 529 U.S. at 484.  For the reasons described above, the government respectfully submits that there can be no reasonable debate about the proper resolution of the claims made in Iraheta's Petition.  The Petition should be dismissed and no COA should issue.

## CONCLUSION

For the foregoing reasons, the Petition should be dismissed and no COA should issue.

Dated:      Brooklyn, New York
            June 5, 2015

                                    Respectfully submitted,

                                    KELLY T. CURRIE
                                    Acting United States Attorney
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

                        By:     /s/ Kevin Trowel_____
                                    Kevin Trowel
                                    Assistant United States Attorney
                                    (718) 254-6351

EXHIBIT 1

EAG:KMT
F. #2011R00271

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

       - against -

ABRAHAM IRAHETA,
    also known as "Lobo,"

                Defendant.

– – – – – – – – – – – – – – – – – –X

<u>PLEA AGREEMENT</u>

Criminal Docket No. 11-857 (WFK)

          Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States

Attorney's Office for the Eastern District of New York (the "Office") and ABRAHAM

IRAHETA (the "defendant") agree to the following:

          1.      The defendant will plead guilty to Counts One and Five of the above-

captioned indictment (the "Indictment"), charging violations of 18 U.S.C. §§ 1962(c) and 924(c).

With respect to the violation of 18 U.S.C. § 1962(c), at his guilty plea, the defendant will admit

as racketeering acts his participation in an attempted murder (as alleged in Racketeering Act 2)

and a conspiracy to murder (as alleged in Racketeering Act 4).  The counts carry the following

statutory penalties:

          <u>Count One (18 U.S.C. § 1962(c))</u>

          a.      Maximum term of imprisonment: 20 years
                  (18 U.S.C. § 1963(a)).

          b.      Minimum term of imprisonment: 0 years
                  (18 U.S.C. § 1963(a)).

1

c.      Maximum supervised release term: 3 years, to follow any term of imprisonment; if a condition of release is violated, the defendant may be sentenced to up to 2 years without credit for pre-release imprisonment or time previously served on post-release supervision
(18 U.S.C. § 3583 (b) & (e)).

d.      Maximum fine:  the greater of $250,000 or twice the gross gain or loss of the enterprise
(18 U.S.C. § 3571).

e.      Restitution:  To be determined by the Court, including costs of medical and related services, physical and other therapy, and lost income.
(18 U.S.C. §§ 3663(a) and 3663A).

f.      $100 special assessment
(18 U.S.C. § 3013).

Count Five (18 U.S.C. § 924(c))

a.      Maximum term of imprisonment: life
(18 U.S.C. § 924(c)(1)(A)(i)).

b.      Minimum term of imprisonment: 5 years
 (18 U.S.C. § 924(c)(1)(A)(i)).

c.      Maximum supervised release term: 5 years, to follow any term of imprisonment; if a condition of release is violated, the defendant may be sentenced to up to 5 years without credit for pre-release imprisonment or time previously served on post-release supervision
(18 U.S.C. §§ 3583 (b), (e)).

d.      Maximum fine: $250,000
(18 U.S.C. § 3571(b)(3)).

e.      $100 special assessment
 (18 U.S.C. § 3013).

The sentence imposed on Count Five must run consecutively to the sentence imposed on Count One.

2

2.     The defendant understands that although imposition of a sentence in accordance with the United States Sentencing Guidelines (the "Guidelines" and "U.S.S.G.") is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case.  The Office will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence.  The Office estimates the likely adjusted offense level under the Guidelines to be 37, which is predicated on the following Guidelines calculation:

Count One (18 U.S.C. § 1962(c))

| | |
|---|---:|
| Racketeering Act One: Conspiracy to Murder<br>Base Offense Level:<br>(§§ 2E1.1(a)(2), 2A1.5(c)(2), 2A2.1(a)(1)) | 33 |
| Plus (Serious Bodily Injury):<br>(§ 2A2.1(b)(1)(B)) | +2 |
| Total: | 35 |
| Racketeering Act Two: Attempted Murder<br>Base Offense Level:<br>(§§ 2E1.1(a)(2), 2A2.1(a)(1)) | 33 |
| Racketeering Act Four: Conspiracy to Murder<br>Base Offense Level:<br>(§§ 2E1.1(a)(2), 2A1.5(a)) | 33 |

Unit Analysis for Count One

| | |
|---|---:|
| Highest Adjusted Offense Level: | 35 |
| Racketeering Act One:<br>Units (§§ 3D1.2(b), 3D1.4(a)): | 1 |
| Racketeering Act Two:<br>Units (§§ 3D1.2(b), 3D1.4(a)): | 1 |

3

| | |
|---|---|
| Racketeering Act Four: | |
| Units (§§ 3D1.2(b), 3D1.4(a)): | <u>1</u> |
| Total Units (§ 3D1.4): | 3 |
| Increase in Offense Level (§ 3D1.4): | +3 |
| Less: Global resolution (§ 5K2.0) | <u>-1</u>[1] |
| Total (§ 3D1.4): | 37 |

<u>Count Five (18 U.S.C. § 924(c))</u>

| | |
|---|---|
| Guideline Range of Imprisonment: (§ 2K2.4) | 60 months |

If the defendant clearly demonstrates acceptance of responsibility, through allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of 35 and a range of imprisonment of 168-210 months, assuming that the defendant falls within Criminal History Category I, plus a mandatory consecutive sentence of imprisonment of 60 months.  Furthermore, if the defendant has accepted responsibility as described above, and if the defendant pleads guilty on or before September 13, 2013 an additional one-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(b), resulting in an adjusted offense level of 34.  This level carries a range of imprisonment of 151-188 months, assuming that the defendant falls within Criminal History Category I, plus a mandatory consecutive sentence of imprisonment of 60 months.  The defendant stipulates to the above Guidelines calculation.

      3.     The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court.  If the Guidelines offense level advocated by the

---

[1]    As set forth in paragraph 7, the one-level reduction for a global resolution is only applicable if the conditions set forth in paragraph 7 are satisfied.

Office, or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement.

        4.     The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 295 months or below. This waiver is binding without regard to the sentencing analysis used by the Court. The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn. The defendant waives any right to additional disclosure from the government in connection with the guilty plea. The defendant agrees that with respect to all charges referred to in paragraphs 1 and 5(a) he is not a "prevailing party" within the meaning of the "Hyde Amendment," 18 U.S.C. § 3006A note, and will not file any claim under that law. The defendant agrees to pay the special assessment by check payable to the Clerk of the Court at or before sentencing.

        5.     The Office agrees that:

        a.    no further criminal charges will be brought against the defendant for his participation in the following crimes charged in the above-captioned indictment: (1) racketeering in connection with MS-13 in or about and between July 2009 and December 2011 as charged in Count One of the Indictment, with predicate acts of: (a) conspiracy to murder members of the rival Original Flushing Crew gang in or about and between July 2009 and December 2011 as charged in Racketeering Act One of the Indictment; (b) attempted murder of John Doe #1 in or about June 2009 as charged in Racketeering Act Two of the Indictment; and (c) conspiracy to murder John Doe #3 in or about and between February 2011 and December 2011 as charged in Racketeering Act Four of the

5

Indictment; (2) racketeering conspiracy in connection with MS-13 in or about and between July 2009 and December 2011 as charged in Count Two of the Indictment; (3) conspiracy to commit murder in-aid-of racketeering of members of the rival Original Flushing Crew gang in or about and between July 2009 and December 2011 as charged in Count Four of the Indictment; (4) using and carrying a firearm in connection with a conspiracy to commit murder in-aid-of racketeering of members of the rival Original Flushing Crew gang in or about and between July 2009 and December 2011 as charged in Count Five of the Indictment; (5) attempted murder in-aid-of racketeering of John Doe #1 in or about July 2009 as charged in Count Six of the Indictment; (6) assault with a dangerous weapon in-aid-of racketeering of John Doe #1 in or about July 2009 as charged in Count Seven of the Indictment; (7) conspiracy to commit murder in-aid-of racketeering of John Doe #3 in or about and between February 2011 and December 2011 as charged in Count Fourteen of the Indictment; (8) using and carrying a firearm in connection with a conspiracy to commit murder in-aid-of racketeering of John Doe #3 in or about and between February 2011 and December 2011 as charged in Count Fifteen of the Indictment; and (9) threatening to commit a crime of violence in-aid-of racketeering against John Doe #6 on or about December 1, 2009 as charged in Count Sixteen; it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq., and at the time of sentence, it will move to dismiss the remaining counts of the Indictment with prejudice;

and, based upon information now known to the Office, it will

b.      take no position concerning where within the Guidelines range determined by the Court the sentence should fall; and

c.      make no motion for an upward departure under the Sentencing Guidelines.

If information relevant to sentencing, as determined by the Office, becomes known to the Office after the date of this agreement, the Office will not be bound by paragraphs 5(b) and 5(c).

Should it be judged by the Office that the defendant has violated any provision of this agreement, the defendant will not be released from his plea of guilty but this Office will be released from its obligations under this agreement, including but not limited to: (a) moving for the additional one-

level downward adjustment for timely acceptance of responsibility described in paragraph 2 above; and (b) the provisions of paragraph 5 (a)-(c).

6.    This agreement does not bind any federal, state, or local prosecuting authority other than the Office, and does not prohibit the Office from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant.

7.    This agreement is conditioned upon the following: (a) the defendants listed below (the "covered defendants") entering guilty pleas, pursuant to plea offers dated August 20, 2013, on or before September 13, 2013, and (b) acceptance of those pleas by a United States District Court Judge at the time of the plea allocution.  The covered defendants are:

    i.      Jose Barrera;

    ii.     Abraham Iraheta; and

    iii.    Jose Celestino Guillen-Rivas

If all of the covered defendants satisfy conditions 7(a)-7(b), the Office will recommend a one-level reduction, pursuant to U.S.S.G. § 5K2.0, based on a global disposition, to the Guidelines calculation, as set forth in paragraph 2.  If fewer than all of the covered defendants satisfy conditions 7(a) and 7(b), or if any of the covered defendants subsequently seeks to withdraw his guilty plea, the Office, in its sole discretion, may elect to void any or all of the covered defendants' plea agreements and proceed to trial.  The Office may also elect not to recommend a reduction under the Guidelines for a global disposition.  No covered defendant will have the right to withdraw his guilty plea in any of those circumstances.

8.    Apart from any written proffer agreement(s), if applicable, no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties.

Apart from any written proffer agreements, if applicable, this agreement supersedes all prior promises, agreements or conditions between the parties.  To become effective, this agreement must be signed by all signatories listed below.

Dated: Brooklyn, New York
           _____, 2013

                                       LORETTA E. LYNCH
                                       United States Attorney
                                       Eastern District of New York

By:      _____

           Tali Farhadian
           Kevin Trowel
           Assistant United States Attorneys

           Approved by:

           _____
           Supervising Assistant U.S. Attorney

I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily.

_____
Abraham Iraheta

Approved by:

_____
Joel Stein, Esq.
Counsel to Defendant

Translated by:

_____

8

# EXHIBIT 2

BB:KMT
F. #2011R00271

ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -

ABRAHAM IRAHETA,
    also known as "Lobo,"

               Defendant.

– – – – – – – – – – – – – – – – –X

<u>PLEA AGREEMENT</u>

Criminal Docket No. 11-857 (WFK)

        Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States

Attorney's Office for the Eastern District of New York (the "Office") and ABRAHAM

IRAHETA (the "defendant") agree to the following:

        1.     The defendant will plead guilty to Count One of the above-captioned

indictment (the "Indictment"), charging a violation of 18 U.S.C. §§ 1962(c). At his guilty plea,

the defendant will admit as racketeering acts his participation in a conspiracy to murder members

of the OFC gang (as alleged in Racketeering Act 1) and a conspiracy to murder John Doe #3 (as

alleged in Racketeering Act 4). The count carries the following statutory penalties:

        <u>Count One (18 U.S.C. § 1962(c))</u>

    a.     Maximum term of imprisonment: 20 years
           (18 U.S.C. § 1963(a)).

    b.     Minimum term of imprisonment: 0 years
           (18 U.S.C. § 1963(a)).

    c.     Maximum supervised release term: 3 years, to follow any term of
           imprisonment; if a condition of release is violated, the defendant
           may be sentenced to up to 2 years without credit for pre-release

1



COURT'S
EXHIBIT NO. 2
IDENTIFICATION/EVIDENCE
DKT.# 11CR857
DATE: 9-16-13
PENGAD 800-631-6989

imprisonment or time previously served on post-release supervision
(18 U.S.C. § 3583 (b) & (e)).

d.   Maximum fine:  the greater of $250,000 or twice the gross gain or loss of the enterprise
(18 U.S.C. § 3571).

e.   Restitution:  To be determined by the Court, including costs of medical and related services, physical and other therapy, and lost income.
(18 U.S.C. §§ 3663(a) and 3663A).

f.   $100 special assessment
(18 U.S.C. § 3013).

2.   The defendant understands that although imposition of a sentence in accordance with the United States Sentencing Guidelines (the "Guidelines" and "U.S.S.G.") is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case.  The Office will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence.  The Office estimates the likely adjusted offense level under the Guidelines to be 36, which is predicated on the following Guidelines calculation:

Count One (18 U.S.C. § 1962(c))

Racketeering Act One: Conspiracy to Murder
Base Offense Level:                                                                    33
(§§ 2E1.1(a)(2), 2A1.5(c)(2), 2A2.1(a)(1))

Plus (Serious Bodily Injury):                                                       +2
(§ 2A2.1(b)(1)(B))

Total:                                                                                          35

Racketeering Act Four: Conspiracy to Murder
Base Offense Level:                                                                      33
(§§ 2E1.1(a)(2), 2A1.5(a))

<u>Unit Analysis for Count One</u>

    Highest Adjusted Offense Level:                                            35

        Racketeering Act One:
        Units (§§ 3D1.2(b), 3D1.4(a)):                              1

        Racketeering Act Four:
        Units (§§ 3D1.2(b), 3D1.4(a)):                              <u>1</u>

        Total Units (§ 3D1.4):                                       2

    Increase in Offense Level (§ 3D1.4):                                      +2

    Less: Global resolution (§ 5K2.0)                                         <u>-1</u>[1]

    Total (§ 3D1.4):                                                          36

If the defendant clearly demonstrates acceptance of responsibility, through allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of 34 and a range of imprisonment of 151-188 months, assuming that the defendant falls within Criminal History Category I.  Furthermore, if the defendant has accepted responsibility as described above, and if the defendant pleads guilty on or before September 13, 2013 an additional one-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(b), resulting in an adjusted offense level of 33. This level carries a range of imprisonment of 135-168 months, assuming that the defendant falls within Criminal History Category I.

        3.     The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court.  If the Guidelines offense level advocated by the

---

[1]     As set forth in paragraph 7, the one-level reduction for a global resolution is only applicable if the conditions set forth in paragraph 7 are satisfied.

Office, or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement.

4.     The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 188 months or below.  This waiver is binding without regard to the sentencing analysis used by the Court.  The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn.  The defendant waives any right to additional disclosure from the government in connection with the guilty plea.  The defendant agrees that with respect to all charges referred to in paragraphs 1 and 5(a) he is not a "prevailing party" within the meaning of the "Hyde Amendment," 18 U.S.C. § 3006A note, and will not file any claim under that law.  The defendant agrees to pay the special assessment by check payable to the Clerk of the Court at or before sentencing.

5.     The Office agrees that:

   a.   no further criminal charges will be brought against the defendant for his participation in the following crimes charged in the above-captioned indictment: (1) racketeering in connection with MS-13 in or about and between July 2009 and December 2011 as charged in Count One of the Indictment, with predicate acts of: (a) conspiracy to murder members of the rival Original Flushing Crew gang in or about and between July 2009 and December 2011 as charged in Racketeering Act One of the Indictment; (b) attempted murder of John Doe #1 in or about June 2009 as charged in Racketeering Act Two of the Indictment; and (c) conspiracy to murder John Doe #3 in or about and between February 2011 and December 2011 as charged in Racketeering Act Four of the

4

Indictment; (2) racketeering conspiracy in connection with MS-13 in or about and between July 2009 and December 2011 as charged in Count Two of the Indictment; (3) conspiracy to commit murder in-aid-of racketeering of members of the rival Original Flushing Crew gang in or about and between July 2009 and December 2011 as charged in Count Four of the Indictment; (4) using and carrying a firearm in connection with a conspiracy to commit murder in-aid-of racketeering of members of the rival Original Flushing Crew gang in or about and between July 2009 and December 2011 as charged in Count Five of the Indictment; (5) attempted murder in-aid-of racketeering of John Doe #1 in or about July 2009 as charged in Count Six of the Indictment; (6) assault with a dangerous weapon in-aid-of racketeering of John Doe #1 in or about July 2009 as charged in Count Seven of the Indictment; (7) conspiracy to commit murder in-aid-of racketeering of John Doe #3 in or about and between February 2011 and December 2011 as charged in Count Fourteen of the Indictment; (8) using and carrying a firearm in connection with a conspiracy to commit murder in-aid-of racketeering of John Doe #3 in or about and between February 2011 and December 2011 as charged in Count Fifteen of the Indictment; and (9) threatening to commit a crime of violence in-aid-of racketeering against John Doe #6 on or about December 1, 2009 as charged in Count Sixteen of the Indictment; it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq., and at the time of sentence, it will move to dismiss the remaining counts of the Indictment with prejudice;

and, based upon information now known to the Office, it will

    b.    take no position concerning where within the Guidelines range determined by the Court the sentence should fall; and

    c.    make no motion for an upward departure under the Sentencing Guidelines.

If information relevant to sentencing, as determined by the Office, becomes known to the Office after the date of this agreement, the Office will not be bound by paragraphs 5(b) and 5(c). Should it be judged by the Office that the defendant has violated any provision of this agreement, the defendant will not be released from his plea of guilty but this Office will be released from its obligations under this agreement, including but not limited to: (a) moving for the additional one-

5

level downward adjustment for timely acceptance of responsibility described in paragraph 2 above; and (b) the provisions of paragraph 5 (a)-(c).

6.      This agreement does not bind any federal, state, or local prosecuting authority other than the Office, and does not prohibit the Office from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant.

7.      This agreement is conditioned upon the following: (a) the defendants listed below (the "covered defendants") entering guilty pleas, pursuant to plea offers dated September 12, 2013, on or before September 13, 2013, and (b) acceptance of those pleas by a United States District Court Judge at the time of the plea allocution.  The covered defendants are:

      i.        Jose Barrera;

      ii.      Abraham Iraheta; and

      iii.     Jose Celestino Guillen-Rivas

If all of the covered defendants satisfy conditions 7(a)-7(b), the Office will recommend a one-level reduction, pursuant to U.S.S.G. § 5K2.0, based on a global disposition, to the Guidelines calculation, as set forth in paragraph 2.  If fewer than all of the covered defendants satisfy conditions 7(a) and 7(b), or if any of the covered defendants subsequently seeks to withdraw his guilty plea, the Office, in its sole discretion, may elect to void any or all of the covered defendants' plea agreements and proceed to trial.  The Office may also elect not to recommend a reduction under the Guidelines for a global disposition.  No covered defendant will have the right to withdraw his guilty plea in any of those circumstances.

8.      Apart from any written proffer agreement(s), if applicable, no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties.

Apart from any written proffer agreements, if applicable, this agreement supersedes all prior promises, agreements or conditions between the parties. To become effective, this agreement must be signed by all signatories listed below.

Dated: Brooklyn, New York
Sept 16 , 2013

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By: _____
Tali Farhadian
Kevin Trowel
Assistant United States Attorneys

Approved by:

_____
Supervising Assistant U.S. Attorney

I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily.

_____
Abraham Iraheta

Approved by:

_____
Joel Stein, Esq.
Counsel to Defendant

Translated by:

_____

8

# EXHIBIT 3

1

1           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - X
3
    UNITED STATES OF AMERICA,    :   11-CR-857(WFK)
4                                :
                                 :   U.S. Courthouse
5                                :   Brooklyn, New York
            -against-            :
6                                :   TRANSCRIPT OF
                                 :   PLEADING
7                                :
                                 :
8    ABRAHAM IRAHETA,            :   September 16, 2013
     also known as "Lobo."       :   1:00 p.m.
9                                :
            Defendant.           :
10   - - - - - - - - - - - - - X

11  BEFORE:
                HONORABLE WILLIAM F. KUNTZ II, U.S.D.J.
12
    APPEARANCES:
13
    For the Government:      LORETTA E. LYNCH, ESQ.
14                           United States Attorney
                             271 Cadman Plaza East
15                           Brooklyn, New York 11201
                             BY:  KEVIN TROWEL, ESQ.
16                                TALI FARHADIAN, ESQ.
                                  Assistant U.S. Attorneys
17

18
    For the Defendant:       JOEL STEIN, ESQ.
19

20

21
    Court Reporter:      Holly Driscoll, CSR
22                       Official Court Reporter
                         225 Cadman Plaza East
23                       Brooklyn, New York 11201
                         (718) 613-2274
24
    Proceedings recorded by mechanical stenography, transcript
25  produced by Computer-Assisted Transcript.

2

1       THE CLERK:  We're here for a criminal guilty plea

2   hearing, docket number 11-CR-857, USA versus Iraheta.

3       Counsel, will you please state your appearances for

4   the record and spell your names for the reporter.

5       MR. TROWEL:  Good afternoon, Your Honor, Kevin

6   Trowel, T R O W E L, for the United States.

7       MS. FARHADIAN:  Good afternoon, Your Honor, Tali

8   Farhadian, also for the United States, T A L I, last name

9   F A R H A D I A N.

10      MR. STEIN:  Good afternoon, Judge, Joel Stein for

11  Abraham Iraheta, J O E L, S T E I N.

12      THE COURT:  Good afternoon.

13      THE DEFENDANT:  Good afternoon.

14      THE COURT:  Good afternoon.

15      And with you today is?

16      MR. STEIN:  My client, Abraham Iraheta.

17      THE COURT:  Thank you.

18      MR. STEIN:  I R A H E T A.

19      THE COURT:  Thank you.  You all may be seated.

20      All right.  I'm going to ask that the door to the

21  outside be closed please.

22      MR. TROWEL:  Your Honor, just to confirm for the

23  record, we're just closing the door, not locking the courtroom

24  or anything like that, just to be clear, correct?  Just that

25  obviously it is important that it be open.

3

1          THE COURT:  You know what they say in show biz,

2   everybody is a critic.  Yes, the door to the outside corridor

3   was wedged open, we always have it closed and it's closed.

4   All right.

5          Mr. Jackson, would you be good enough to swear the

6   witness please.

7          (Defendant sworn by the clerk.)

8          THE COURT:  Thank you.

9          Good afternoon, Mr. Iraheta.

10          THE DEFENDANT:  Good afternoon.

11          THE COURT:  Would you briefly describe your

12   educational background beginning with high school.

13          THE DEFENDANT:  GED.

14          THE COURT:  GED?

15          THE DEFENDANT:  Yeah.

16          THE COURT:  Would you pull the microphone a little

17   closer to you.

18          Where did you get your GED?

19          THE DEFENDANT:  Job Corps.

20          THE COURT:  Would you briefly describe your

21   employment history.

22          THE DEFENDANT:  I worked in a couple of restaurants

23   and the last job I had was in Twins Electric Corporation.

24          THE COURT:  What did you do in the restaurant

25   business?

4

1          THE DEFENDANT:  I was a bus boy.

2          THE COURT:  And what did you do for Twins Electric?

3          THE DEFENDANT:  Electrician.

4          THE COURT:  Other than those two kinds of jobs, have

5    you held any other kinds of jobs in your life, sir?

6          THE DEFENDANT:  No.

7          THE COURT:  Okay.  Sir, have you taken any drugs,

8    any medicine or any pills or consumed any alcoholic beverage

9    in the last 24 hours?

10         THE DEFENDANT:  No.

11         THE COURT:  And sir, do you understand what is

12   happening here today, sir?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Defense counsel, do you have any doubt

15   as to your client's competence at this time?

16         MR. STEIN:  No.

17         THE COURT:  Prosecutor, do you have any doubt as to

18   the defendant's competence at this time?

19         MR. TROWEL:  No, Your Honor.

20         THE COURT:  The Court hereby finds based on

21   the record of the defendant's representations and the

22   representations of all counsel of record that the defendant

23   is competent.

24         Mr. Iraheta, I will now read the charges set forth

25   in the introduction to and in Count One of the indictment

5

1    which was filed in this case before this Court on December

2    30th of 2011.

3                "The Grand Jury Charges:

4                Introduction

5                At all times relevant to this indictment, unless

6    otherwise indicated:

7                1.   La Mara Salvatrucha, also known as the MS-13,

8    hereinafter the MS-13 or the enterprise, was a gang comprised

9    primarily of immigrants from Central America, with members

10   located throughout Queens, New York, Long Island, New York,

11   and elsewhere.  Members and associates of the MS-13 have

12   engaged in narcotics trafficking and acts of violence,

13   including murder, attempted murder, robbery and assault.

14               2.   The defendants Wilber Baires, also known as

15   "Doofy," Jose Barrera, also known as "Travieso," Kevin

16   Cardona, also known as "Stalker," Rudy Guembes-Lorena, also

17   known as "Darky," Jose Celestino Guillen-Rivas, also known as

18   "Pirata," Carlos Hernandez, also known as "Morro," Abraham

19   Iraheta, also known as "Lobo," Alex Machado, also known as

20   "Negro," Christian Merino, also known as "Casper," and Nelson

21   Quinteros, also known as "Sonic," were members and associates

22   of the MS-13.

23               3.   The MS-13, including its leadership, members and

24   associates, constituted an enterprise as defined by Title 18,

25   United States Code, Section 1961(4), that is, a group of

6

1    individuals associated in fact.  The enterprise constituted an

2    ongoing organization whose members functioned as a continuing

3    unit for a common purpose of achieving the objectives of the

4    enterprise.  The enterprise was engaged in, and its activities

5    affected, interstate and foreign commerce.

6              Purposes of the Enterprise

7              4.  The purposes of the enterprise included the

8    following:

9              a.  Promoting and enhancing the prestige, reputation

10   and position of the enterprise with respect to rival criminal

11   organizations.

12             b.  Preserving and protecting the power, territory

13   and criminal ventures of the enterprise through the use of

14   intimidation, threats of violence and acts of violence,

15   including assault and murder.

16             c.  Keeping victims and rivals in fear of the

17   enterprise and its members and associates.

18             d.  Enriching the members and associates of the

19   enterprise through criminal activity, including robbery and

20   narcotics trafficking.

21             Means and Methods of the Enterprise

22             5.  Among the means and methods by which the

23   defendants and their associates conducted and participated in

24   the conduct of the affairs of the enterprise were the

25   following:

7

a.   Members of the MS-13 and their associates committed, attempted to commit and threatened to commit acts of violence, including murder, attempted murder, robbery and assault, to enhance the enterprise's prestige and protect and expand the enterprise's criminal operations.

b.   Members of the MS-13 and their associates used and threatened to use physical violence against various individuals, including members of rival criminal organizations.

c.   Members of the enterprise and their associates used, attempted to use and conspired to use robbery and narcotics trafficking as means of obtaining money.

Count One (Racketeering)

6.   The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

7.   In or about and between July 2009 and the date of this indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants Jose Barrera, also known as "Travieso," Abraham Iraheta, also known as "Lobo," and Christian Merino, also known as "Casper," together with others, being persons employed by and associated with the MS-13, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly

8

1  and intentionally conduct and participate directly and

2  indirectly in the conduct of the affairs of the MS-13 through

3  a pattern of racketeering activity, as that term is defined by

4  Title 18, United States Code, Sections 1961(a) and 1961(5),

5  consisting of the racketeering acts set forth below.

6          Racketeering Act One  (Conspiracy to Murder)

7          8.  In or about and between July 2009 and the date

8  of this indictment, both dates being approximate and

9  inclusive, within the Eastern District of New York, the

10  defendants Jose Barrera, Abraham Iraheta and Christian Merino,

11  together with others, did knowingly and intentionally conspire

12  to cause the death of one or more persons, to wit:  members of

13  a set of the rival Original Flushing Crew gang, located in

14  Flushing, New York, in violation of New York Penal Law

15  Sections 125.25(1) and 105.15.

16          Racketeering Act Two (Attempted Murder)

17          9.  In or about July 2009, within the Eastern

18  District of New York, the defendant Abraham Iraheta, together

19  with others, did knowingly and intentionally attempt to cause

20  the death of another person, to wit:  John Doe Number One, an

21  individual whose identity is known to the Grand Jury, in

22  violation of New York Penal Law Sections 125.25(1) and 110.00

23  and 20.00.

24          Racketeering Act Three (Attempted Murder)

25          10.  On or about September 24th, 2010, within the

9

1    Eastern District of New York, the defendants Jose Barrera and

2    Christian Merino, together with others, did knowingly and

3    intentionally attempt to cause the death of another person, to

4    wit:  John Doe Number Two, an individual whose identity is

5    known to the Grand Jury, in violation of New York Penal Law

6    Sections 125.25(1) and 110.00 and 20.00.

7             Let me go back one moment to Count One, racketeering

8    paragraph seven, the last sentence should read -- I'll read

9    paragraph seven again in its entirety:

10            Count One

11            In or about and between July 2009 and the date of

12   this indictment, both dates being approximate and inclusive,

13   within the Eastern District of New York and elsewhere, the

14   defendants Jose Barrera, also known as "Travieso," Abraham

15   Iraheta, also known as "Lobo," and Christian Merino, also

16   known as "Casper," together with others, being persons

17   employed by and associated with the MS-13, an enterprise

18   engaged in, and the activities of which affected, interstate

19   and foreign commerce, did knowingly and intentionally conduct

20   and participate directly and indirectly in the conduct of the

21   affairs of the MS-13 through a pattern of racketeering

22   activity, as that term is defined by Title 18, United States

23   Code Section, 1961(1) and 1961(5), not (a) as I previously

24   read, consisting of the racketeering acts set forth below.

25            Let me continue.  Racketeering -- paragraph ten,

1    I'll read that again:

2           Racketeering Act Three (Attempted Murder)

3           10.   On or about September 24, 2010, within the

4    Eastern District of New York, the defendants Jose Barrera and

5    Christian Merino, together with others, did knowingly and

6    intentionally attempt to cause the death of another person, to

7    wit:  John Doe Number Two, an individual whose identity is

8    known to the Grand Jury, in violation of New York Penal Law

9    Sections 125.25(1) and 110.00 and 20.00.

10          Racketeering Act Four (Conspiracy to Murder)

11          11.   In or about and between February 2011 and the

12   date of this indictment, both dates being approximate and

13   inclusive, within the Eastern District of New York, the

14   defendant Abraham Iraheta and Christian Merino, together with

15   others, did knowingly and intentionally conspire to cause the

16   death of another person, to wit:  John Doe Number Three, an

17   individual whose identity is known to the Grand Jury, in

18   violation of New York Penal Law Sections 125.25(1) and 105.15.

19          Title 18, U.S. Code, Sections 1962(c), 1963 and

20   3551 et sequentia.

21          A true bill was signed by the Foreperson of the

22   Grand Jury and signed by the Acting United States Attorney for

23   the Eastern District of New York.

24          This indictment contains a total of 17 counts.  Do

25   the defendant and the government want the reading of the

1    remainder of the indictment?

2              MR. TROWEL:  The government would waive a reading of

3    the further counts, Your Honor.

4              MR. STEIN:  I would agree, Judge.

5              THE COURT:  Okay.  I also have the plea agreement.

6    Do we have the signed version here in court please?

7              MR. TROWEL:  (Handing.)

8              (Pause.)

9              THE COURT:  And the plea agreement which has been

10   marked as Court Exhibit Two for identification and it reads as

11   follows:  I note that it has been signed by the Assistant U.S.

12   Attorneys on behalf of Loretta E. Lynch, it's been signed by

13   the Supervising Assistant U.S. Attorney, it's been signed by

14   the defendant and signed by Mr. Stein as counsel.

15             The plea agreement reads in its entirety as follows:

16             Pursuant to Rule 11 of the Federal Rules of

17   Criminal Procedure, the United States Attorney's Office for

18   the Eastern District of New York (the "Office") and Abraham

19   Iraheta (the "defendant") agree to the following:

20             1.  The defendant will plead guilty to Count One of

21   the above-captioned indictment (the "Indictment"), charging a

22   violation of 18 U.S.C. Section 1962(c).  At his guilty plea,

23   the defendant will admit as racketeering acts his

24   participation in a conspiracy to murder members of the OFC

25   gang (as alleged in Racketeering Act One) and a conspiracy to

1   murder John Doe Number Three (as alleged in Racketeering Act

2   Four).

3         The count carries the following statutory penalties:

4         Count One (18 U.S.C. Section 1962(c))

5         a. Maximum term of imprisonment: 20 years, under

6   18 U.S.C. Section 1963(a).

7         b. Minimum term of imprisonment: Zero years, under

8   18 U.S.C. Section 1963(a).

9         c. Maximum supervised release term: Three years to

10   follow any term of imprisonment; if a condition of release is

11   violated, the defendant may be sentenced to up to two years

12   without credit for pre-release imprisonment or time previously

13   served on post-release supervision. (18 U.S.C. Sections

14   3583(b) and (e)).

15         d: Maximum fine: The greater of $250,000 or twice

16   the gross gain or loss of the enterprise. That's 18 U.S.C.

17   Section 3571.

18         e: Restitution: To be determined by the Court,

19   including costs of medical and related services, physical and

20   other therapy, and lost income. (18 U.S.C. Sections 3663(a)

21   and 3663A).

22         f: Special assessment: $100, pursuant to 18 U.S.C.

23   Section 3013.

24         2. The defendant understands that although

25   imposition of a sentence in accordance with the United States

1   Sentencing Guidelines is not mandatory, the Guidelines are

2   advisory and the Court is required to consider any applicable

3   Guidelines provisions as well as other factors enumerated in

4   18 U.S.C. Section 3553(a) to arrive at an appropriate sentence

5   in this case.  The Office will advise the Court and the

6   Probation Department of information relevant to sentencing,

7   including criminal activity engaged in by the defendant, and

8   such information may be used by the Court in determining the

9   defendant's sentence.  The Office estimates the likely

10  adjusted offense level under the Guidelines to be 36, which is

11  predicated on the following Guidelines calculation:

12          Count One, which is 18 U.S.C. Section 1962(c)

13          Racketeering Act One:  Conspiracy to Murder

14          Base Offense Level:  33

15          Plus serious bodily injury, that's a plus 2 for a

16  total of 35.

17          Racketeering Act Four:  Conspiracy to Murder:  33

18  Base Offense Level.

19          Unit analysis for Count One

20          Highest Adjusted Offense Level:  35

21          Racketeering Act One:

22          Units (Sections 3D1.2(b) and 3D1.4(a):  1

23          Racketeering Act Four:

24          Units (Sections 3D1.2(b) and 3D1.4(a):   1

25          Total units pursuant to Section 3D1.4:   2

14

1          Increase in Offense Level (Section 3D1.4):    Plus 2

2          Less:  Global resolution (Section 5K2.0):    Minus 1

3          Total (Section 3D1.4):                        36

4          If the defendant clearly demonstrates acceptance of

5     responsibility, through allocution and subsequent conduct

6     prior to the imposition of sentence, a two-level reduction

7     will be warranted, pursuant to U.S.S.G. Section 3E1.1(a),

8     resulting in an adjusted offense level of 34 and a range of

9     imprisonment of 151 to 188 months, assuming that the defendant

10    falls within Criminal History Category I.  Furthermore, if the

11    defendant has accepted responsibility as described above and

12    if the defendant pleads guilty on or about September 13, 2013

13    an additional one-level reduction will be warranted pursuant

14    to U.S.S.G. 3E1.1(b), resulting in an adjusted offense level

15    of 33.  This level carries a range of imprisonment of 135 to

16    168 months, assuming that the defendant falls within Criminal

17    History Category I.

18          The Guidelines estimate set forth in paragraph two

19    is not binding on the Office, the Probation Department or this

20    Court.  If the Guidelines offense level advocated by the

21    Office or determined by the Probation Department or the Court

22    is, for any reason, including an error in the estimate,

23    different from the estimate, the defendant will not be

24    entitled to withdraw the guilty plea and the government will

25    not be deemed to have breached the agreement.

15

1          The defendant agrees not to file an appeal or

2     otherwise challenge, by petition pursuant to 28 U.S.C. Section

3     2225 or any other provision, the conviction or sentence in the

4     event the Court imposes a term of imprisonment of 188 months

5     or below.  This waiver is binding without regard to the

6     sentencing analysis used by the Court.  The defendant waives

7     all defenses based on the statute of limitations and venue

8     with respect to any prosecution that is not time-barred on the

9     date that this agreement is signed in the event that (a) the

10    defendant's conviction is later vacated for any reason, (b)

11    the defendant violates this agreement, or (c) the defendant's

12    plea is later withdrawn.  The defendant waives any right to

13    additional disclosure from the government in connection with

14    the guilty plea.  The defendant agrees that with respect to

15    all charges referred to in paragraphs 1 and 5(a) he is not a

16    "prevailing party" within the meaning of the Hyde Amendment,

17    18 U.S.C. Section 3006A note, and will not file any claim

18    under that law.  The defendant agrees to pay the special

19    assessment by check payable to the Clerk of the Court at or

20    before sentencing.

21          5.   The office agrees that:

22          (a)   no further criminal charges will be brought

23    against the defendant for his participation in the following

24    crimes charged in the above captioned indictment:

25    (1) racketeering in connection with MS-13 in or about and

1   between July 2009 and December 2011 as charged in Count One of

2   the indictment, with predicate acts of:  (a) conspiracy to

3   murder members of the rival Original Flushing Crew gang in or

4   about and between July 2009 and December 2011 as charged in

5   Racketeering Act One of the indictment; (b) attempted murder

6   of John Doe Number One in or about June 2009 as charged in

7   Racketeering Act Two of the indictment; and (c) conspiracy to

8   murder John Doe Number Three in or about and between February

9   2011 and December 2011 as charged in Racketeering Act Four of

10  the indictment; (2) racketeering conspiracy in connection with

11  MS-13 in or about and between July 2009 and December 2011 as

12  charged in Count Two of the indictment; (3) conspiracy to

13  commit murder in-aid-of racketeering of members of the rival

14  Original Flushing Crew gang in or about and between July 2009

15  and December 2011 as charged in Count Four of the indictment;

16  (4) using and carrying a firearm in connection with a

17  conspiracy to commit murder in-aid-of racketeering of members

18  of the rival Original Flushing Crew gang in or about and

19  between July 2009 and December 2011 as charged in Count Five

20  of the indictment; (5) attempted murder in-aid-of racketeering

21  of John Doe Number One in or about July 2009 as charged in

22  Count Six of the indictment; (6) assault with a dangerous

23  weapon in-aid-of racketeering of John Doe Number One in or

24  about July 2009 as charged in Count Seven of the indictment;

25  (7) conspiracy to commit murder in-aid-of racketeering of John

1   Doe Number Three in or about and between February 2011 and

2   December 2011 as charged in Count Fourteen of the indictment;

3   (8) using and carrying a firearm in connection with a

4   conspiracy to commit murder in-aid-of racketeering of John Doe

5   Number Three in or about and between February 2011 and

6   December 2011, as charged in Count Fifteen of the indictment;

7   and (9) threatening to commit a crime of violence in-aid-of

8   racketeering against John Doe Number Six on or about December

9   1st of 2009, as charged in Count Sixteen of the indictment; it

10  being understood that this agreement does not bar the use of

11  such conduct as a predicate act or as the basis for a

12  sentencing enhancement in a subsequent prosecution including,

13  but not limited to, a prosecution pursuant to 18 U.S.C.

14  Sections 1961 et sequentia, and at the time of sentence, it

15  will move to dismiss the remaining counts of the indictment

16  with prejudice;

17          and, based upon information now known to the Office,

18  it will:

19          (b)  take no position concerning where within the

20  Guidelines range determined by the Court the sentence should

21  fall; and

22          (c)  make no motion for an upward departure under

23  the Sentencing Guidelines.

24          If information relevant to sentencing, as determined

25  by the Office, becomes known to the Office after the date of

18

1   this agreement, the Office will not be bound by paragraphs

2   5(b) and 5(c).  Should it be judged by the Office that the

3   defendant has violated any provision of this agreement, the

4   defendant will not be released from his plea of guilty but

5   this Office will be released from its obligations under this

6   agreement, including but not limited to:  (a) moving for the

7   additional one-level downward departure -- downward adjustment

8   for timely acceptance of responsibility described in paragraph

9   2 above; and (b) the provisions of paragraphs 5(a) through

10  (c).

11          6.  This agreement does not bind any federal, state

12  or local prosecuting authority other than the Office, and it

13  does not prohibit the Office from initiating or prosecuting

14  any civil or administrative proceedings directly or indirectly

15  involving the defendant.

16          7.  This agreement is conditioned upon the

17  following:  (a) the defendants listed below (the "covered

18  defendants") entering guilty pleas, pursuant to plea offers

19  dated September 12, 2013, on or about September 13, 2013.

20          That's what it says here.  I guess that needs to be

21  changed.

22          MR. TROWEL:  We can change that by hand, Your Honor,

23  yes.

24          THE COURT:  And what would you like to change it to,

25  so the record is clear?

19

1          MR. TROWEL:  I think we're awaiting a sentencing

2     date for one of the final individuals, I think we can safely

3     put Friday -- I meant a plea date, sorry.  We are awaiting a

4     plea date for one of these three named defendants.

5          THE COURT:  It says pursuant to pleas dated

6     September 12 on or before September -- what date should we put

7     in there?

8          MR. TROWEL:  I think we're likely to get them all

9     done by Friday.

10          THE COURT:  Will you just tell me what date you want

11     in and I'll put it in and read it into the record.

12          MR. TROWEL:  The 20th, Your Honor.

13          THE COURT:  So, paragraph seven will be amended to

14     read as follows:  This agreement is conditioned upon the

15     following:  The defendants listed below, the covered

16     defendants, entering guilty pleas pursuant to plea offers

17     dated September 12, 2013 on or before September 20th of 2013;

18     is that correct?

19          MR. TROWEL:  That's correct, Your Honor.

20          THE COURT:  Defense counsel; is that correct?

21          MR. STEIN:  Yes.

22          THE COURT:  All right.  So, we'll make that change

23     and you will initial it, that's on page six, it will be

24     initialed by counsel.

25          And (b) acceptance of those pleas by a United States

1    District Court Judge at the time of the plea allocution.  The

2    covered defendants are:

3              i.    Jose Barrera;

4              ii.   Abraham Iraheta; and

5              iii.  Jose Celestino Guillen-Rivas

6    If all the covered defendants satisfy conditions 7(a) and

7    7(b), the Office will recommend a one-level reduction,

8    pursuant to U.S.S.G. Section 5K2.0, based on a global

9    disposition to the Guidelines calculation as set forth in

10   paragraph 2.  If fewer than all the covered defendants satisfy

11   condition 7(a) and 7(b), or if any of the covered defendants

12   subsequently seeks to withdraw his guilty plea, the Office in

13   its sole discretion may elect to void any or all of the

14   covered defendants' plea agreements and proceed to trial.  The

15   Office may also elect not to recommend a reduction under the

16   Guidelines for a global disposition.  No covered defendant

17   will have the right to withdraw his guilty plea in any of

18   those circumstances.

19             8.    Apart from any written proffer agreements, if

20   applicable, no promises, agreements or conditions have been

21   entered into by the parties other than those set forth in this

22   agreement and none will be entered into unless memorialized in

23   writing and signed by all parties.  Apart from any written

24   proffer agreements, if applicable, this agreement supersedes

25   all prior promises, agreements or conditions between the

1    parties.  To become effective, this agreement must be signed

2    by all signatories listed below.

3              And, as I indicated earlier, it has been signed by

4    all signatories and is dated Brooklyn, New York, September

5    16th of 2013.

6              So, have I read that properly, counsel?

7              MR. TROWEL:  Yes, Your Honor.

8              MR. STEIN:  Yes.

9              THE COURT:  All right.  I'm going to hand this back

10   to Mr. Jackson and ask you to turn your attention to page six

11   and, if you're amenable, to initial the change from September

12   13 to September 20th with respect to the agreed upon date and

13   return it to Mr. Jackson, and that's Court Exhibit Two, and

14   may I have a motion to have that admitted into evidence

15   please?

16             MR. TROWEL:  The government moves to admit

17   Government Exhibit 2 into evidence.

18             THE COURT:  Any objection?

19             MR. STEIN:  No.

20             THE COURT:  It is admitted.

21             MR. STEIN:  Judge, there is one thing I wanted to

22   add, I don't know whether it is necessary to do it now.

23             THE COURT:  You can sit down and use the mike.

24             MR. STEIN:  Near the bottom of page two of the

25   agreement.

22

1        THE COURT:  Yes.

2        MR. STEIN:  There's an enhancement of two levels

3   under the government's estimate of the guidelines calculation.

4        THE COURT:  That's the plus serious bodily injury --

5        MR. STEIN:  Correct.

6        THE COURT:  -- item, right.  Okay.

7        MR. STEIN:  Correct.  We've agreed to disagree about

8   that and leave it subject to the Court's determination at

9   sentencing.

10       THE COURT:  I don't understand what you mean by you

11  agree to disagree, what does that mean?

12       MR. STEIN:  Myself and the prosecutors had a

13  discussion about this and we've agreed to disagree about

14  whether or not that applies.

15       MR. TROWEL:  Your Honor, to clarify, I think all

16  defense counsel is noting is what's noted already in paragraph

17  two which is that the government's estimate of the guidelines

18  is, of course, not binding on the Court or on Probation.

19  Defense counsel takes a different view of that enhancement

20  and, based on our discussions, I would expect that defense

21  counsel would challenge that prior to sentencing.  So, there

22  may be some litigation before Your Honor to determine whether

23  those two points apply.

24       THE COURT:  I understand.

25       MR. TROWEL:  I think defense counsel is just

23

1    preserving that for the record.

2              THE COURT:  I understand.

3              All right.  Exhibit Two is admitted into evidence.

4              Here you are, Mr. Jackson (handing).

5              THE CLERK:  Thank you, Judge.

6              THE COURT:  Mr. Iraheta, unless counsel wishes to be

7    heard or has an objection at this point, the Court believes we

8    may now to turn to the procedures for taking your plea in this

9    case.

10             Any objections, counsel?

11             MR. STEIN:  No.

12             THE COURT:  Any objections?

13             MR. TROWEL:  No, Your Honor.

14             THE COURT:  Mr. Iraheta, your attorney advises this

15   Court that you wish to plead guilty to the charges contained

16   in the count of the indictment and pursuant to your plea

17   agreement both of which I've just read to you; do you need

18   time to have them read to you again?

19             THE DEFENDANT:  No.

20             THE COURT:  I say again this is a serious decision

21   and I must be certain that you make it understanding your

22   rights and the consequences of your plea.  You understand that

23   having just been sworn to tell the truth, you must do so.  If

24   you were to lie to this Court deliberately in response to any

25   question I ask you, you would face further criminal charges

24

1     for perjury.  Do you understand that, sir?

2             THE DEFENDANT:  Yes.

3             THE COURT:  If you need me to repeat anything, you

4     have only to ask, sir, and I will do so.  It is important that

5     you understand everything that goes on in these proceedings

6     today.  Is that clear, sir?

7             THE DEFENDANT:  Yes.

8             THE COURT:  Sir, how old are you?

9             THE DEFENDANT:  I'm 22.

10            THE COURT:  And sir, I must be certain that whatever

11    decisions you make today you make with a clear head so I'm

12    going to ask you some questions about your health.  First, are

13    you presently or have you recently been under the care of a

14    doctor, a psychiatrist, a psychologist or any other medical

15    person for any reason?

16            THE DEFENDANT:  No.

17            THE COURT:  Secondly, in the past 24 hours have you

18    taken any pills, any drugs, any medication of any kind?

19            THE DEFENDANT:  No.

20            THE COURT:  Next, in the past 24 hours have you

21    consumed any alcoholic beverage?

22            THE DEFENDANT:  No.

23            THE COURT:  Next, have you ever been hospitalized or

24    treated for any drug related problem?

25            THE DEFENDANT:  No.

25

1          THE COURT:  Next, is your mind clear as you sit here
2     today, sir?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Next, do you understand everything that
5     is being said to you, sir?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Next, defense counsel, have you
8     discussed the question of a guilty plea with your client?

9          MR. STEIN:  I have.

10          THE COURT:  In your view, sir, does he understand
11     the rights he would be waiving by pleading guilty?

12          MR. STEIN:  Yes.

13          THE COURT:  Do you have any questions, counsel, as
14     to his competence to proceed today?

15          MR. STEIN:  No.

16          THE COURT:  Mr. Iraheta, are you satisfied with the
17     assistance your attorney has given you thus far in this case?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Counsel for the defendant, do you feel
20     you need more time to discuss the question of a guilty plea
21     with your client?

22          MR. STEIN:  No.

23          THE COURT:  I have previously read Count One of the
24     indictment to you, sir.  Do you need to hear it again?

25          THE DEFENDANT:  No.

26

1          THE COURT:  Now, sir, you have a right to trial, you

2   have a right to plead not guilty to this charge, no one can be

3   forced to plead guilty.  Do you understand that, sir?

4          THE DEFENDANT:  Yes.

5          THE COURT:  If you plead not guilty to this charge

6   or if you persist in your plea of not guilty, you have a right

7   under the Constitution and the laws of the United States of

8   America to a speedy and a public trial before a jury of your

9   peers with the assistance of your attorney.  Do you understand

10  that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  At any trial, sir, you would be presumed

13  to be innocent.  You would not have to prove that you were

14  innocent.  That is because under our system of law, it is the

15  government that must come forward with proof that establishes

16  beyond a reasonable doubt that you are in fact guilty of the

17  crime charged.  If the government failed to meet this burden

18  of proof, the jury would have the duty to find you not guilty.

19  Do you understand that, sir?

20         THE DEFENDANT:  Yes.

21         THE COURT:  In the course of a trial, witnesses

22  for the government would have to come here to court and

23  testify in your presence.  Your lawyer would have the right

24  to cross-examine these witnesses.  He could raise legal

25  objections to the evidence the government sought to offer

27

1    against you.  He could offer evidence on your behalf if you

2    thought there was evidence that might help you in your case.

3    He could compel witnesses to come to this court and to testify

4    in your defense if you thought that would help your case.  Do

5    you understand that, sir?

6              THE DEFENDANT:  Yes.

7              THE COURT:  At a trial you would have the right to

8    testify on your own behalf if you wished to do so.  On the

9    other hand, you could not be forced to be a witness at your

10   trial.  This is because under the Constitution and laws of the

11   United States of America no person can be compelled to be a

12   witness against himself.  If you wished to go to trial but

13   chose not to testify, this Court would instruct the jury that

14   it could not hold that against you, sir.  Do you understand?

15             THE DEFENDANT:  Yes.

16             THE COURT:  If instead of going to trial, sir, you

17   elect to plead guilty to the crime charged and if I accept

18   your guilty plea, you will be giving up your right to a trial

19   and all the other rights I have just discussed.  There will be

20   no trial in this case.  There will be no appeal on the

21   question of whether you did or did not commit the crime set

22   forth in Count One of the indictment.  You could appeal only

23   if the sentence I imposed exceeded the agreed upon sentence

24   set forth in your plea agreement, that is to say if the

25   sentence exceeded 188 months.  If I calculated a sentencing

28

1   range which was different from the range that you've

2   calculated and agreed with the government, in other words,

3   higher than that, and if I thereafter imposed a sentence that

4   fell above that range that you have agreed to with the

5   government, you would have the right to appeal that sentence

6   to a higher court and while this Court is not bound by the

7   guidelines, this Court will take them into consideration in

8   determining what would be a reasonable sentence under all the

9   circumstances available to me in this case.  Is that

10  understood, sir?

11           THE DEFENDANT:  Yes.

12           THE COURT:  There is, however, a waiver of any right

13  to appeal if the Court imposes a term of imprisonment of 188

14  months or below.  Do you understand that, sir?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Is that the understanding of counsel?

17           MR. STEIN:  Yes.

18           THE COURT:  So, to be crystal clear, if I were to

19  sentence you to above 188 months regardless of how I do it,

20  you would have a right to appeal the sentence and if you could

21  no longer at that point afford the fees and expenses

22  associated with the appeal, including counsel fees, you could

23  apply to the Court for the appointment of counsel and the fees

24  and expenses would be paid pursuant to prescribed rates set by

25  the government pursuant to the authority of the Criminal

29

1   Justice Act.  Do you understand, sir?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Otherwise, I will simply enter a

4   judgment of guilty based upon your plea of guilty.  Do you

5   understand?

6           THE DEFENDANT:  Yes.

7           THE COURT:  If you do plead guilty, I will have to

8   ask you certain questions about what you did and where you did

9   it in order to satisfy myself that you are in fact guilty of

10  the charge.  You will have to answer my questions and to

11  acknowledge your guilt.  If you do this, you will be giving up

12  your right not to incriminate yourself.  Do you understand

13  that, sir?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Sir, are you willing to give up your

16  right to a trial and all the other rights I have just

17  discussed with you?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Sir, I note you've signed it but I want

20  to ask you did you see and hear and understand everything the

21  prosecution and your counsel placed in the written plea

22  agreement that you signed?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Did you have an opportunity to discuss

25  that agreement with your lawyer before you signed it?

30

1          THE DEFENDANT:  Yes.

2          THE COURT:  And did you in fact discuss it with your

3     lawyer before you signed it?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Is there any other agreement, sir, that

6     has been reached or made with you in order to get you to plead

7     guilty other than the written plea agreement?

8          THE DEFENDANT:  I don't get it.  What was that?

9          THE COURT:  Other than the written plea agreement,

10    do you have any other deal that led you to plead guilty?

11         THE DEFENDANT:  No.

12         THE COURT:  Now, the Court has marked the indictment

13    as Exhibit One for identification.  May I have a motion to

14    admit it into evidence please?

15         MR. TROWEL:  The government moves to admit Court's

16    Exhibit One into evidence.

17         THE COURT:  Any objection, counsel?

18         MR. STEIN:  No.

19         THE COURT:  It's admitted.

20         The plea agreement, Court Exhibit Two, is already in

21    evidence.

22         Sir, do you understand the consequences of pleading

23    guilty to this charge in terms of incarceration?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Let me take you back to the plea

31

1   agreement and discuss with you some important information

2   relevant to the sentence.

3           Paragraph one of your agreement sets out the

4   statutory terms that you face.  These are the penalties that

5   are written directly by Congress for violation of the statutes

6   you're charged with violating here today.

7           You face a maximum term of twenty years in prison.

8   Do you understand that, sir?

9           THE DEFENDANT:  Yes.

10          THE COURT:  You face a minimum term of imprisonment

11  of zero years.  Do you understand that, sir?

12          THE DEFENDANT:  Yes.

13          THE COURT:  You face a maximum supervised release

14  term of three years.  Do you understand that, sir?

15          THE DEFENDANT:  Yes.

16          THE COURT:  You face a maximum fine as well in the

17  amount of $250,000 or twice the gross gain or loss of the

18  enterprise.  Do you understand that, sir?

19          THE DEFENDANT:  Yes.

20          THE COURT:  You face restitution to be determined by

21  the Court including costs of medical and related services,

22  physical and other therapy and lost income.  Do you understand

23  that, sir?

24          THE DEFENDANT:  Yes.

25          THE COURT:  You also face a mandatory special

32

1    assessment of $100 which I am required to impose in all cases.

2    Do you understand that, sir?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Sir, this is a sentencing guideline

5    case, as I stated previously.  So, in sentencing you the Court

6    will have to consider certain guidelines.  The guidelines do

7    not control the Court but inform the Court.  Has your counsel

8    discussed the sentencing guidelines with you?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Counsel, is that accurate?

11             MR. STEIN:  Yes.

12             THE COURT:  When the Court sentences you, sir, the

13   Court will have to consider certain factors about you and

14   about the count in the indictment.  That inquiry will lead the

15   Court to a guideline having a sentencing range.  The Court is

16   not required to sentence you within that range.  This Court is

17   empowered to impose a sentence which is less than, equal to or

18   greater than that provided by the guidelines, but in all

19   cases, including this one, this Court must and will consult

20   the guidelines concerning the range of sentences before this

21   Court in this case.

22             Now, before the Court imposes sentence, the Court

23   will receive a report prepared by the Probation Department

24   which will recommend a particular guideline to the Court.  You

25   and your counsel will have the opportunity to see that report

1   and if you think that report is mistaken, incomplete or simply

2   wrong in any way, you will have the opportunity to bring that

3   to the attention of this Court.

4          Now, sir, do you have any questions at all that you

5   would like to ask the Court?

6          THE DEFENDANT:  No.

7          THE COURT:  Does defense counsel have any questions?

8          MR. STEIN:  No.

9          THE COURT:  Is there anything else defense counsel

10  would like to say to the Court at this time?

11         MR. STEIN:  No.

12         THE COURT:  Does the Assistant United States

13  Attorney have any questions?

14         MR. TROWEL:  No, Your Honor.

15         THE COURT:  Does the Assistant United States

16  Attorney have anything else you would like to say to the Court

17  at this time or like the Court to address at this time?

18         MR. TROWEL:  No, Your Honor.

19         THE COURT:  Defense counsel, do you know of any

20  reason why your client should not enter a plea of guilty to

21  Count One of the indictment?

22         MR. STEIN:  No.

23         THE COURT:  Are you aware of any viable legal

24  defense to the charge?

25         MR. STEIN:  No.

34

1          THE COURT:  Sir, are you ready to plead?

2          THE DEFENDANT:  Yes.

3          THE COURT:  How do you plead to the charge contained

4    in Count One of the indictment filed against you, guilty or

5    not guilty?

6          THE DEFENDANT:  Guilty.

7          THE COURT:  Are you making this plea of guilty

8    voluntarily and of your own free will?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Has anyone threatened or forced you to

11   plead guilty?

12          THE DEFENDANT:  No.

13          THE COURT:  Other than the written plea agreement

14   with the government which is in evidence, has anyone made you

15   any promise that caused you to plead guilty?

16          THE DEFENDANT:  No.

17          THE COURT:  Has anyone made you any promise about

18   the sentence you will receive from this Court?

19          THE DEFENDANT:  No.

20          THE COURT:  Sir, describe briefly in your own words

21   what you did to commit the crime charged in Count One of the

22   indictment and where you did it.

23          THE DEFENDANT:  I conspired to murder an OFC member

24   in Flushing.

25          THE COURT:  In Flushing, Queens, New York?

35

1          THE DEFENDANT:  In Queens, yeah, New York.

2          THE COURT:  And OFC, what does that stand for?

3          THE DEFENDANT:  It is a rival gang 'cause I'm an

4     MS-13 gang member.

5          THE COURT:  Is that Original Flushing Crew, OFC?

6          THE DEFENDANT:  Yeah, Original Flushing Crew.

7          THE COURT:  And when did you do this?

8          THE DEFENDANT:  In July 2009.  July 2009.

9          THE COURT:  Through what period of time?  It started

10    in July 2009?

11         THE DEFENDANT:  Yeah.

12         THE COURT:  How long did it go?

13         THE DEFENDANT:  And I conspired to murder in

14    February 11, 2009 -- I mean 2011, sorry.

15         THE COURT:  So, what are the dates just so I'm

16    clear; when did it start, when did it stop?

17         THE DEFENDANT:  It stopped to the day I got

18    arrested.

19         THE COURT:  And when was that?

20         THE DEFENDANT:  January 5th, 2012.

21         THE COURT:  So, it started in -- just so we're

22    clear, it started in 2009?

23         THE DEFENDANT:  Yeah.

24         THE COURT:  Yes?

25         THE DEFENDANT:  Yes.

36

1          THE COURT:  And continued until you were arrested?

2          THE DEFENDANT:  Yeah.

3          THE COURT:  And it was in Queens, New York?

4          THE DEFENDANT:  Correct.

5          THE COURT:  And that was as part of your membership

6     in MS-13?

7          THE DEFENDANT:  Yes.

8          THE COURT:  I'm going to ask the prosecution if

9     there's anything else you would like me to ask this witness?

10          MR. TROWEL:  Your Honor, I think it may be useful to

11     just go through some of the facts about MS-13 to ensure that

12     we have --

13          THE COURT:  You go right ahead and do that.

14          MR. TROWEL:  Thank you.

15          The government would be prepared to prove at trial,

16     Your Honor --

17          THE COURT:  Slow it down for the court reporter.

18          MR. TROWEL:  The government would be prepared to

19     prove at trial, Your Honor, that MS-13 is an enterprise,

20     that's a group of people pursuing a common purpose as set

21     forth in the indictment; that the defendant was a member of

22     the charged enterprise during this period.  The government

23     would also be prepared to prove that the enterprise affected

24     interstate or foreign commerce insofar as the enterprise had

25     weapons, including firearms, that traveled in interstate

1 | commerce.  The government would also be prepared to prove that
2 | the defendant was associated with the enterprise insofar as he
3 | was a member, he was inducted into the organization and played
4 | a part in it during the period charged in the indictment.
5 |     THE COURT:  All right.
6 |     MR. TROWEL:  It may be worth, Your Honor, asking the
7 | defendant if he agrees with that, just to clarify the record,
8 | if he agrees with those facts.
9 |     THE COURT:  Do you agree with those facts, sir?
10 |     THE DEFENDANT:  Yes.
11 |     MR. TROWEL:  With respect to Racketeering Act One
12 | which the defendant allocuted to a moment ago, the government
13 | would also be prepared to prove that in furtherance of that
14 | act, in furtherance of the conspiracy, the defendant and other
15 | members of the conspiracy procured weapons, including knives,
16 | machetes and firearms in furtherance of the conspiracy to
17 | murder members of OFC.
18 |     THE COURT:  Do you agree with that statement, sir?
19 |     THE DEFENDANT:  Just knives and machetes and bats I
20 | had.
21 |     THE COURT:  Knives, machetes and bats, no firearms?
22 |     THE DEFENDANT:  No.
23 |     MR. STEIN:  Excuse me, Judge --
24 |     THE COURT:  Are you sure about that?
25 |     (Counsel confers with the defendant.)

38

1          THE DEFENDANT:  Oh.  Yes.

2          THE COURT:  Yes what?

3          THE DEFENDANT:  That's true.

4          THE COURT:  Firearms too?

5          THE DEFENDANT:  Yeah.

6          THE COURT:  Why don't you read it again, let's make

7    sure the record is clear.

8          MR. TROWEL:  Just for purposes, Your Honor, of

9    establishing an overt act under New York law, the government

10   would be prepared to prove at trial that members of the

11   conspiracy amassed weapons, including knives, machetes and

12   firearms, which they procured in furtherance of the conspiracy

13   to kill OFC members.

14         THE COURT:  Did you hear what the prosecutor just

15   said?

16         THE DEFENDANT:  Yeah.

17         THE COURT:  Do you agree with that statement?

18         THE DEFENDANT:  Yes.

19         THE COURT:  That's true with respect to the

20   conspiracy you were part of?

21         THE DEFENDANT:  Yes.

22         MR. TROWEL:  I think that satisfies the general

23   elements and also the elements of Racketeering Act One.

24         THE COURT:  You can talk with your colleague.

25         (Pause.)

39

1          THE COURT:  Anything else?

2          MR. TROWEL:  I think we're all set.  I think, Your

3     Honor, we just need to turn to Racketeering Act Four.

4          THE COURT:  Go right ahead.  What would you like me

5     to have him address with respect to Racketeering Act Four?

6          MR. TROWEL:  Your Honor, it may be useful to have

7     the defendant allocute in his own words and then the

8     government can proffer or chime in with issues that may not

9     have been covered by his allocution.

10         THE COURT:  Why don't you indicate what you'd like

11    him to allocute to and then we'll see what he has to say.  He

12    said what he had to say.

13         MR. TROWEL:  He hasn't actually to Racketeering Act

14    Four, he allocuted to Racketeering Act One.

15         THE COURT:  Why don't you raise the issue directly

16    and I will ask him to address it.

17         MR. TROWEL:  Okay.  Your Honor, as part of the plea

18    agreement, the defendant has agreed to plead to both

19    Racketeering Act One and Racketeering Act Four.  I think

20    Racketeering Act One is covered by the defendant's prior

21    allocution as supplemented by the government's proffer.

22    Racketeering Act Four, which charges a separate conspiracy to

23    murder John Doe Number Three between the period of February

24    2011 and the date of the indictment, the government would be

25    prepared to prove at trial that the defendant together with

1  others conspired to murder John Doe Number Three and they did

2  that in furtherance of their membership in MS-13 and, similar

3  to Racketeering Act One, they took the overt step or an overt

4  act in furtherance of the conspiracy, they amassed weapons,

5  including a firearm and other weapons, to carry out that

6  conspiracy.

7             THE COURT:  Do you agree that that's what you did,

8  sir?

9             THE DEFENDANT:  Yes.

10             MR. TROWEL:  Also just to clarify, John Doe Number

11  Three is an individual, a so-called primo in the MS-13 gang,

12  an associate, who the government would be prepared to prove

13  that members of the conspiracy alleged in Racketeering Act

14  Four conspired to murder that individual in revenge for an

15  attack on another member of the defendant's click.  So, the

16  government would be prepared to prove at trial, Your Honor,

17  that the defendant together with others sought to murder this

18  individual, this associate of MS-13 in revenge and in

19  furtherance of their membership in their click of MS-13.

20             THE COURT:  Sir, do you agree with that statement

21  that you've heard from the prosecution?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Anything else?

24             MR. TROWEL:  Your Honor, if we could have one just

25  very brief moment?

41

1           THE COURT:  You can have one brief or not brief

2    moment.

3           (Pause while government counsel confer.)

4           MR. TROWEL:  Your Honor, it may be useful to just

5    have the defendant, even though through the government proffer

6    I think we have probably established the elements of

7    Racketeering Act Four, it may be useful to have the defendant

8    just say in his own words what happened just to clarify the

9    record and fill it out a little bit.

10          THE COURT:  I think the record is quite clear.  What

11   would you like him to say?

12          MR. TROWEL:  Well, Your Honor, I think from the

13   perspective of the defendant pleading guilty, it is his own

14   words.  I think what the government would like is for him to

15   offer an explanation of the acts in his own words.

16          THE COURT:  Were you planning to kill someone else

17   they've referred to as John Doe Number Three?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Tell us all about it.

20          THE DEFENDANT:  I was gonna -- I was conspiring to

21   kill with other gang members another person that sliced one of

22   my homey's face.

23          THE COURT:  When was that you were planning to kill

24   this person?

25          THE DEFENDANT:  In February 2011.

42

1          THE COURT:  Why were you planning to kill this

2  person?

3          THE DEFENDANT:  Because he sliced one of my homey's

4  face.

5          THE COURT:  He what, I'm sorry?

6          THE DEFENDANT:  He sliced one of my homey's face.

7          THE COURT:  He sliced one of your homey's faces with

8  a knife or -- what did he slice it with?

9          THE DEFENDANT:  He sliced him with a sharp object.

10          THE COURT:  A sharp object.  And so, you were going

11  to kill this guy, right?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  When were you going to do that?

14          THE DEFENDANT:  When we found him.

15          THE COURT:  And where were you going to do it?  Were

16  you going to do it in New York?

17          THE DEFENDANT:  Yeah, in New York.

18          THE COURT:  In the Eastern District of New York, in

19  Queens?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Was this fellow one of your -- was he an

22  OFC member or was he a member of MS-13 or who was he?

23          THE DEFENDANT:  He was a primo.

24          THE COURT:  He was a primo.  What's primo?

25          THE DEFENDANT:  It's a neutral guy that hangs out

1    with MS-13.

2              THE COURT:  A neutral guy who hangs out with MS-13?

3              THE DEFENDANT:  Yeah.

4              THE COURT:  Okay.  And so you were going to kill

5    this guy, right?

6              THE DEFENDANT:  Yeah.

7              THE COURT:  Okay.  Did you kill him?

8              THE DEFENDANT:  No.

9              THE COURT:  All right.

10             Anything else?

11             MR. TROWEL:  No, Your Honor, thank you.

12             THE COURT:  Based upon the information given to me,

13   I find that the defendant is acting voluntarily, that he fully

14   understands the charge, his rights and the consequences of his

15   plea.  There is, moreover, a factual basis for the plea.  I

16   therefore accept the plea of guilty to the charges in the

17   indictment to which this defendant has just allocuted.

18             Is there a bail application?

19             MR. TROWEL:  No.

20             THE COURT:  I hereby order the Probation Department

21   to set an appropriate date for sentencing in consultation with

22   this Court.

23             Is there anything further that either counsel wishes

24   to state to the Court today?

25             MR. STEIN:  No.

44

1          MR. TROWEL:  Not from the government, Your Honor.

2          THE COURT:  Then this Court is adjourned.  I thank

3    you all.

4          MR. TROWEL:  Thank you, Your Honor.

5          THE COURT:  Thank you.

6          (Time noted:  2:10 p.m.)

7          (End of proceedings.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 4

*Law Offices*
*of*
## JOEL M. STEIN, ESQ.

U.S.P.O. Jeremy Neiss
U.S. Probation Dept.
Eastern District of New York
147 Pierrepont St.
Brooklyn, NY 11201

30 Wall Street, 8th Floor
New York, NY 10005
(212)344-8008
jmsteinesq@aol.com

April 25 , 2014

USA v. Baires, et al.
11 CR 857 (WFK)

Dear Mr. Neiss:

　　　The defendant Abraham Iraheta submits these objections to the Presentence Report ("PSR") which was disclosed on April 11, 2014. The PSR calculates an advisory guidelines range of 210-262 months[1] based on an offense level of 37 and criminal history category I.[2] The defendant's plea agreement calculates an advisory guidelines range of 135-168 months, based on an offense level of 33 and criminal history category I.[3]

## THREATENING TO COMMIT A CRIME OF VIOLENCE AGAINST JOHN DOE#6(COUNT 16)

　　　PSR, 32, states that "/o/n December 1, 2011 Abraham Iraheta threatened to attack a New York City Police Department(NYPD) detective and brandished a baseball bat at him. Law enforcement authorities had received information that Iraheta and others were planning an assault on OFC and NYPD officers were attempting to intercept Iraheta and others when this occurred."[4] This alleged conduct is the basis of count 16, which the government has agreed to dismiss at sentencing. PSR, 42,142 describes this conduct as an aggravating factor which the Court may consider at sentencing.[5]

　　　Prior to entering a guilty plea, the defendant moved to dismiss this count because the government conceded that a video surveillance tape of this incident was inexplicably "lost" after the arresting officer took it home without vouchering it or otherwise documenting its seizure. Notably, the defendant has contended that he was assaulted by law enforcement officers during the course of this incident, as a result of which he obtained medical treatment for his injuries.The video would have displayed the assault on Mr. Iraheta. The Court never specifically ruled on this motion.[6]

---

[1] Since the statutory maximum is 240 months, the restricted guides range is 210-240 months
[2] The defendant's plea agreement provides for a reduction of 1 level, pursuant to USSG policy statement 5K2.0, based upon a global disposition. If the Court accepts this provision. the advisory guidelines range would be 188-235 months
[3] The plea agreement includes an appeal waiver which prohibits an appeal if the sentence is 188 months or less.
[4] The defendant's plea agreement prohibits the government from requesting an upward variance based on this conduct, since it was aware of the allegation at the time of the execution of the agreement
[5] The government must prove this conduct by a preponderance of the evidence
[6] Although the Court denied the defendant's motions to suppress after an evidentiary hearing with a summary order(dkt entry, 7/19/13),, it did not specifically address the motion to dismiss.count 16.

# JOEL M. STEIN, ESQ.

The defendant further contends, as he would have if this matter had proceeded to trial, that he and "others" were not planning an assault on OFC members, when NYC police officers arrived at his residence. Rather, this incident was set up by an informant, Marvin Ruiz, a/k/a "Bang, Bang," who, immediately before this incident, told the defendant that members of OFC were outside of his residence, when they were not actually there, and called the police. Since Mr. Iraheta had been previously assaulted by members of OFC, he prepared to defend himself if needed (see PSR, 54). The police were in plainclothes and arrived at the behest of Ruiz in an unmarked car with tinted windows, and aggressively drove their car onto the grass in front of the defendant's residence.

## ATTEMPTED MURDER OF JOHN DOE # 1 (COUNT 6)

The PSR, 41,73-78, includes a calculation based on the allegation that the defendant committed the offense of attempted aggravated assault of John Doe#1, in that he swung a machete at John Doe's head.[7] This alleged conduct is the subject of count 6, which the government has agreed to dismiss at the time of sentencing.

The defendant believes that John Doe #1 is the father of the leader of OFC. On this occasion, J.D.#1 attempted to stab the defendant with an ice pick, and, as a result, the defendant defended himself, which he has had to do on a number of prior occasions in confrontations with members of OFC.

## ENHANCEMENT FOR OBSTRUCTION OF JUSTICE AND DISALLOWANCE OF ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY

Notwithstanding that the defendant's plea agreement does not include an enhancement for obstruction of justice and allows for an adjustment for acceptance of responsibility, the PSR, 52,53-57,65,71 and 77, includes the enhancement and disallows the adjustment, on the basis that the defendant allegedly made false statements in his affidavit in support of his motions to suppress. PSR, 52 concludes that in denying the defendant's motions to suppress, "the Court found that the agents were credible, and that the defendant's version of events was not credible." However, the Court did not make such a finding, since it issued a summary ruling denying the defendant's motions, without making any findings of fact. In addition, the defendant called two other witnesses to testify at the suppression hearing, his mother, Maria Machado, and his sister, Jennifer Machado, who were present where they also resided, when the police entered the defendant's residence to arrest him Finally, the defendant's motions also raised legal grounds for suppression which did not require resolution of credibility issues, and, in the absence of findings and conclusions by the Court, there is no basis for the PSR's conclusion.

---

[7] The inclusion of this conduct in the PSR does not change its calculation of the applicable advisory guidelines range. PSR, 82.

Case 1:11-cr-00857-WFK   Document 274   Filed 06/05/15   Page 86 of 116 PageID #: 1861

# JOEL M. STEIN, ESQ.

cc: AUSA Talia Farhadian

    Judge William F. Kuntz

Very truly yours,

Joel M. Stein, Esq.
Counsel for Abraham Iraheta

# EXHIBIT 5

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,          :
                                   : 11-CR-857
                                   : (WFK)
                                   :
      -against-                    :
                                   :
                                   : United States Courthouse
                                   : Brooklyn, New York
                                   :
ABRAHAM IRAHETA,                   :
                                   :
          DEFENDANT.               : Thursday, July 24, 2014
                                   : 1:00 p.m.
                                   :
- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

| For the Government: | KELLY T. CURRIE, ESQ. |
| | Acting United States Attorney |
| | BY: **KEVIN M. TROWEL, ESQ.** |
| | Assistant United States Attorney |

| For the Defendant Abraham Iraheta: | BY: **JOEL MARK STEIN, ESQ.** |

| | UNITED STATES PROBATION DEPARTMENT |
| | BY: **JEREMY S. NEISS, USPO** |

Courtroom Deputy: **Andrew Jackson**

Court Reporter:    **Mary Agnes Drury, RPR**
                   Official Court Reporter
                   Telephone: (718) 613-2615
                   E-mail: Mad78910@yahoo.com

Proceedings recorded by computerized stenography.  Transcript produced by Computer-aided Transcription.

2

1              (In open court.)

2              (Time Noted:  1:04 p.m.)

3              (Defendant present in open court.)

4              COURTROOM DEPUTY:  All rise, the United States

5    District Court for the Eastern District of New York is now

6    in session, the Honorable William F. Kuntz, II is now

7    presiding.

8              (Honorable William F. Kuntz, II takes the bench.)

9              COURTROOM DEPUTY:  Calling Criminal Cause for

10   Sentencing in Docket No. 11-CR-857, *United States of America*

11   *against Abraham Iraheta.*

12             Will counsel please state their appearances for

13   the record.

14             MR. TROWEL:  Should I wait for the defendant, your

15   Honor?

16             THE COURT:  I think this much will be allowed to

17   go forward without having to call him back.

18             MR. TROWEL:  Thank you, your Honor.  Kevin Trowel

19   for the United States, and with me is Jeremy Neiss from

20   probation.

21             THE COURT:  Thank you.  Mr. Trowel, will you

22   please spell your name for the reporter.  I know you've been

23   here before, but just in case.

24             MR. TROWEL:  Thank you, your Honor.  T-r-o-w-e-l.

25             THE COURT:  And you, sir.

3

1          MR. NEISS:  N-e-i-s-s.

2          THE COURT:  Thank you.  And you may be seated.

3   The defendant is here.  Good afternoon, sir.

4          MR. STEIN:  Good afternoon, Judge, Joel Stein for

5   Abraham Iraheta, who is on my right.

6          THE DEFENDANT:  Good afternoon.

7          THE COURT:  Good afternoon, gentlemen, you may be

8   seated as well.

9          Do we need an interpreter here today?

10          MR. STEIN:  No.

11          THE COURT:  Okay.  Are there any other counsel who

12   wish to note their appearance?

13          MR. TROWEL:  Not as far as the government knows,

14   your Honor, no.

15          MR. STEIN:  No.

16          THE COURT:  Mr. Jackson, we're not using the

17   services of the interpreter today, so I'm going to ask you,

18   Mr. Iraheta, have you had an opportunity to review carefully

19   your presentence investigative report, which was prepared on

20   April 11, 2014, sir?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And why don't you use that microphone;

23   that way, the court reporter and everyone can hear you

24   clearly.

25          THE DEFENDANT:  Yes.

4

1          THE COURT:  Thank you, sir.  Have you had an

2     opportunity to review the addendum to that report, which is

3     dated June 16th, 2014, sir?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Have you, in fact, carefully reviewed

6     these reports with your counsel.

7          THE DEFENDANT:  That's correct.

8          THE COURT:  Okay.  Now, there is also a set of

9     objections to the presentence investigative report, which

10    was prepared by your defense counsel on April 25th of 2014,

11    have you seen that?

12         THE DEFENDANT:  Yep.

13         THE COURT:  Have you seen the Memorandum of Law in

14    Aid of Sentencing filed July 17th, written by your defense

15    counsel recommending a sentence in this case, sir?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And have you seen the United States

18    government's sentencing letter dated July 22nd of 2014, sir?

19         THE DEFENDANT:  Yes.

20         THE COURT:  In addition to the materials already

21    mentioned, my files reflect a copy of the following

22    documents:  A 17-count indictment that was filed on

23    December 30th, 2011; a written plea agreement which was

24    dated September 16th, 2013, and signed by the Assistant

25    United States Attorney Tali Farhadian, a Supervising

5

1    Assistant United States attorney, and defense counsel, and

2    yourself.  Also, the US probation department's revised

3    sentencing recommendation, which was sent to me on June 16th

4    of 2014.

5         The question I have for you, sir, is are you

6    prepared to go forward with your sentencing today?

7         THE DEFENDANT:  Yes.

8         THE COURT:  Now, sir, you have the right to

9    address this Court before I impose sentence.  I will give

10   you that opportunity to do so in just a few minutes, you can

11   say anything you wish to say, that you think is appropriate

12   at that time before I finally my judgment in this case.

13        Do you understand me, sir?

14        THE DEFENDANT:  Yes.

15        THE COURT:  Sir, are you satisfied with your

16   counsel's representation so far?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Now, the United States Sentencing

19   Analysis states the sentencing options as a statutory

20   maximum imprisonment term of 20 years, a supervised release

21   testimony of not more than three years if a term of

22   imprisonment is imposed, and a fine of up to an amount of

23   $250,000.

24        The base offense level in this case finds the

25   defendant accountable for two acts of racketeering, each of

6

1    which has a base offense level of 33.  Under the multiple

2    count adjustment, these acts are not grouped.  This results

3    in the addition of two levels to the defendant's sentence,

4    and an adjusted offense level of 35.

5             The defendant has pled guilty and it is this

6    Court's understanding that the position of the Government is

7    that the government was notified in a timely manner by the

8    defendant through his counsel of his intention to do so.

9    Thereby permitting a downward adjustment of three levels for

10   acceptance of responsibility, which would bring the offense

11   level to 32.

12            Furthermore, pursuant to the plea agreement, the

13   parties have agreed to an additional one-level reduction,

14   because of the global resolution of this matter.  With this

15   downward adjustment, the total adjusted offense level would

16   be 31, or if the Court declined to follow the global

17   resolution reduction, the level would be 32, which with a

18   criminal history category of I, would yield a guideline

19   imprisonment range of 108 to 135 months or 121 to 151 months

20   if the Court declined to follow the global resolution

21   reduction.

22            So I will ask counsel, first the government and

23   then defense counsel, am I missing any documents pertinent

24   to today's proceeding?

25            MR. TROWEL:  No.  No, your Honor.

7

1          THE COURT:  Defense counsel?

2          MR. STEIN:  No, your Honor, but you made a

3   reference to a recommendation, which I guess was included in

4   the addendum, I haven't seen the recommendation.

5          THE COURT:  Nor will you.

6          MR. STEIN:  Excuse me?

7          THE COURT:  Nor will you.  Are there any

8   objections that either counsel wishes to raise.

9          MR. TROWEL:  As to the guidelines, no, your Honor.

10          MR. STEIN:  No.

11          THE COURT:  That being the case, I will now turn

12   it over to defense counsel.

13          MR. STEIN:  Thank you, Judge.  Judge, along with

14   my letter of July 17th, I submitted a number of letters; one

15   of which is from my client himself, and from various family

16   members who are in court here, his mother, and his two

17   sisters submitted letters, and I believe it's a friend of

18   the family as well.

19          So my client is 23 years old.  In more ways than

20   one, this case actually has a longer history than the

21   allegations in the indictment.  As I stated in my letter,

22   this -- my client's relationship with MS 13 actually began

23   when he was very young.  When he was in intermediate school,

24   he was the subject of bullying and was subjected to various

25   verbal and physical abuse.  I showed it to Mr. Trowel

8

1   earlier this afternoon, I don't know whether the Court wants

2   to see it, but I have a photograph, which was given to me by

3   family members that was taken of my client's upper body,

4   including his face, when he was in intermediate school and

5   he was approximately 13 or 14 years old, if the Court wants

6   to see it, you can see quite easily that he has black eyes

7   from having been physically abused.

8           THE COURT:  If you would like to mark it as an

9   exhibit and show it to prosecution, the Court's happy to

10  review it.

11          MR. TROWEL:  I have seen the photograph.  He

12  showed it to me just prior to sentencing, your Honor.

13          THE COURT:  Do you want to mark it as part of the

14  record and hand it up to the Court.

15          MR. STEIN:  Do you want me to write it on the

16  back?

17          THE COURT:  Just identify it by whatever

18  appropriate letter.

19          MR. STEIN:  So I'm identifying as Defense

20  Exhibit A.

21          THE COURT:  Okay.  You can hand it to Mr. Jackson,

22  please.

23          (Exhibit handed.)

24          THE COURT:  Thank you.  The record should reflect

25  that I've been handed Court Exhibit A.  Any objection to

9

1    this coming into evidence?

2              MR. TROWEL:  No objection, your Honor.

3              THE COURT:  Any objection, sir?

4              MR. STEIN:  No.

5              THE COURT:  All right.  It is in evidence.  Thank

6    you.  I have it.  Mr. Jackson, this should be made part of

7    the record.  Go ahead, please.

8              (Court Exhibit A was admitted into evidence.)

9              MR. STEIN:  So that was when he was about 13 years

10   old.  It was the wrong thing to do, but at least in terms of

11   someone of that age, he sought protection because he felt he

12   needed it and couldn't handle it by himself, so he

13   affiliated himself with a gang.

14             And the conduct that has actually the subject of

15   indictment, which began I believe in 2009, occurred when my

16   client was 18 years old.  Now, he's 23 years old.  He's

17   still a very young man.  To me, he's a kid.  Not that that

18   justifies at all what he did that leads him to here, but at

19   least in terms of his maturity, his ability to make good

20   judgments, I think was certainly influenced by his youth.

21             So after he became affiliated with MS 13, that

22   doesn't mean that he was just a full-time gang member, as

23   you can see in the submissions that I made to the Court,

24   along with some supporting documents, he had a job for -- on

25   and off for a number of years.  And most importantly, he

10

1  attended, while he was -- during a period of time that's

2  covered by the indictment, from 2010 to 2011, he joined a

3  job corps and attended it quite successfully in Upstate New

4  York from 2010 to 2011.  During that time while he was

5  there, he received training as an electrician.  He got his

6  GED, and I have a number of certificates which I also have

7  shown to Mr. Trowel earlier which showed the very

8  complimentary descriptions that he got when he was there.

9  And again, that occurred while the period of time that's

10 charged in this indictment.  He at one point was actually

11 student of month.  It may sound somewhat trivial compared to

12 what we're dealing with here in court, but it's important,

13 because it shows that in connection with the employment that

14 he's had, he filed tax returns, it's documented in the

15 presentence report, he can be a responsible person if he

16 wants to.

17         I've represented him for two and a half years,

18 literally from day one, so I know him pretty well.  He's an

19 intelligent person, which is demonstrated by his educational

20 experience when he was at the job corp in Oneonta.

21         In terms of conduct in this case, it's bad.  I

22 mean, there is no way for me to say that it's not bad;

23 otherwise, we wouldn't be here talking today.  But I think

24 it's also important to know that in terms of two

25 racketeering acts that he's pleaded guilty to, as well as

1    the rest of the conduct that's encompassed by the

2    indictment, there is no occasion that I'm aware of, and

3    Mr. Trowel can speak for the government, in which he

4    actually inflicted injury with a weapon.  It doesn't mean

5    that he didn't do bad things that were assaultive in nature,

6    that were violent, but there was no occasion that he

7    actually, himself, inflicted physical injury on anyone.

8          I know yesterday by comparison your Honor

9    sentenced one of the codefendants in the case, Mr. Barrera,

10   who on one occasion, stabbed an individual on three

11   occasions while that individual was being struck in the head

12   with a baseball bat and a golf club.  No such conduct could

13   possibly, that I'm aware of, could be attributed by my

14   client.  He did bad things that were violent and

15   threatening, I don't dispute that and wouldn't dispute it,

16   but in terms of actually inflicting injury, that didn't

17   happen, fortunately.

18         Now, he's been in jail for two and a half years;

19   probably everyone else in the case has been in jail for two

20   and a half years, and I don't know whether the Court, I

21   don't mean to be presumptuous, has any awareness of what

22   it's like to be in the MDC for two and a half years.  Except

23   to come to Court, which doesn't happen very often, he's

24   never been outside for two and a half years.  There is no

25   yard, so to speak, no place to exercise.  He's been

1   literally locked up for two and a half years.  In a lot of

2   other places, including the MCC, at least there are places

3   you can go to outside.  So I'm asking you to consider the

4   conditions of his confinement as well.

5           So there are members of his family here.  He is

6   very close with his family members; particularly with his

7   mother and two sisters.

8           More importantly, Judge, than the family members

9   that are here, not to minimize them, he has a son,

10  Christian, who is now six years old.  He is -- the son's

11  mother is very young, since -- she's 19 herself, since then

12  she's had two other children.  So when Mr. Iraheta got

13  locked up, his son was three years old, and now his son is

14  six years old.  In two and a half years he's since his son

15  once.  His son lives with the maternal grandmother, who is

16  apparently, from what I understand, a very strict woman, and

17  she didn't condone her grandson visiting, even if it's

18  father in prison.  So the mother took him on one visit in

19  two and a half years.  He talks to him on the phone.  There

20  is no way that could possibly replace personal contact, let

21  alone being supportive of someone, as I think my client is

22  of a young man who is maturing.  Now, he's going to miss all

23  of that.  I don't mean my client is going to miss it, he's

24  in jail and that's his problem, but his son is going to miss

25  it.

13

1            I made reference in my submission to the state of

2      this epidemic in the United States.  Over 2 million people

3      in jail, and many of them are parents of children who are

4      growing up without the parent who is in jail.  It's bad.

5      There is no other way to describe it.  And unfortunately, my

6      client is a statistic in this epidemic.

7            So whatever period of time he has to spend in

8      jail, that's his fault, but it shouldn't be inflicted on his

9      son as well, who he has very little relationship now, expect

10     to speak with him on the phone several times a week.  It's

11     sad, frankly.  I don't think anybody can deny that on a

12     human level.

13            Now, your Honor has a lot of discretion.  From

14     what I see as the most culpable person in the case, other

15     than -- I can't speak to the person -- the clients in this

16     case who cooperated, but at least in terms of the others, I

17     don't see my client, and I hope the Court agrees, as the

18     most culpable person in the case; especially, when he didn't

19     actually injure anybody, as opposed to people in this case,

20     including yesterday, who actually inflicted serious injuries

21     on people.

22            So he's a young man.  He's worked.  He did very

23     well with the job corp, which I think frankly, I'm not

24     saying this just as his defense counsel, I think he should

25     be commended for.  He got himself out of a gang situation,

14

1    went upstate completely away from that.  It was probably

2    like Mars to him up there, and he did very well.  It shows

3    what he's capable of doing when he's given the opportunity,

4    and he did it on his own initiative.  No one sent him there.

5    There was no court supervision requiring it, he did it on

6    his own and he did it very well.

7            I'm asking you, your Honor, to take all of this

8    into consideration and consider giving Mr. Iraheta a

9    non-guideline sentence below the guidelines, of course.

10           THE COURT:  Does that complete your statement,

11   sir?

12           MR. STEIN:  Yes.

13           THE COURT:  Okay.  Thank you.  I'll hear from the

14   government and then I'll hear from the defendant.

15           MR. TROWEL:  Thank you, your Honor, just very

16   briefly.

17           I think -- I don't think we have any factual

18   dispute about what's contained in the PSR, and I don't

19   intend to raise one now.  I think your Honor has been

20   involved in a number of these sentencings in this case to

21   date; it's obvious, you're very familiar with the PSR and

22   the facts of the case.  You've also heard testimony from a

23   number of people in the course of the suppression hearing in

24   the case.

25           I think it's important to note that although it's

1    true that Mr. Iraheta is not charged in the incident with

2    the stabbing that your Honor -- Mr. Barrera was sentenced

3    yesterday for his guilty plea to that charge.  I don't think

4    it's exactly correct to say that he wasn't -- he didn't

5    inflict injury.  There is no stabbing, that's true, but part

6    of what the gang did was to operate in the Flushing

7    neighborhood with weapons; machetes seem to have been a

8    favored choice.

9            And I think at trial what the Court would have

10   heard, what the jury would have heard is that the gang

11   operated in the neighborhood, there were fights, there were

12   confrontations.  I don't -- I'm not -- the government does

13   not have evidence that the defendant was involved in the

14   stabbing or a shooting or anything of that nature, but I

15   don't think it's accurate to say there wasn't injury.  There

16   was violence associated with Mr. Iraheta's conduct, and

17   there were weapons as well, and I think that is important.

18   It's not -- these are not totally dry conspiracies; as it

19   were, there is serious conduct and steps in furtherance of

20   the conspiracy.  I think it's clear that that's the case as

21   well.

22           I think part of that is reflective in the phone

23   calls that the government had as evidence in the case, too

24   where Mr. Iraheta and others are on the phone describing the

25   conspiracy, describing assaults, discussing assaults, you

1    know, sometimes before, sometimes after they happen, and I

2    think that's relevant as well.

3              Mr. Stein has, of course, mentioned a number of

4    3553(a) factors that the Court can and should consider, and

5    the government doesn't dispute that.  The one thing that I

6    would raise with respect to Mr. Iraheta's employment history

7    is that, MS 13, as I think your Honor may know, having dealt

8    with a number of these defendants, is unusual in some

9    respects because the members very often do have jobs that

10   they keep and maintain, even while they're members of the

11   gang, and that's unique, I think, as compared to Bloods and

12   Crips and other gangs that the Court sees on a regular

13   basis.  So it's certainly something the Court should

14   consider, I just point out that it's not terribly unusual in

15   the context, and I don't think it necessarily speaks to his

16   involvement in the gang as a whole.

17             If your Honor has specific questions, I'm happy to

18   address them; otherwise, we rest on our papers.

19             THE COURT:  Thank you.  Do you have any response?

20   Of course.

21             MR. STEIN:  I just wanted to add one thing; the

22   stabbing that we both referred to, my client was in the job

23   corp at that time, probably hundreds of miles away.

24             THE COURT:  Okay.  All right.  I will hear from

25   the defendant, if he wishes to make a statement.

1          THE DEFENDANT:  Yes, your Honor.  I want to say

2     that I was really young and I wasn't thinking straight.  And

3     I want to apologize to my family for hurting them and

4     disappointing them.  I love you.  And I want to tell you,

5     your Honor, if you can find it in your heart and if you can

6     give me a second chance, I can be involved in my son's life.

7     That's all I ask.  Thank you.

8          THE COURT:  Thank you, sir.

9          Mr. Iraheta, having pled guilty in this case, you

10    have a right to appeal any sentence imposed by this Court if

11    that sentence is more than 188 months, as set forth in

12    paragraph four of your plea agreement.  Do you understand

13    that, sir?

14         THE DEFENDANT:  Yes.

15         THE COURT:  The Court has this to say:  Perfect

16    justice in this case would involve a power that neither nor

17    any judge, nor any human being for that matter has in his or

18    her hands.  It is both challenging and humbling to sit here

19    as the Court empowered and directed to pass sentence on a

20    fellow human being.

21         As your counsel has said and as you have just

22    said, sir, this case impacts your family.  This case impacts

23    the victims of your crimes.  Ultimately, of course, this

24    case impacts you, because this case is ultimately about you,

25    about what you did that brought us here today, a day of

18

1    sadness and of tragedy.

2          Your counsel has pointed out that you were

3    approximately 14 years old, and that you were susceptible to

4    peer influence.  That is true, but it is true for all 14

5    year olds that the Court has ever seen.

6          Although the video surveillance tape of the

7    incident in which you allegedly threatened to attack a New

8    York City police detective was inexplicably lost after that

9    arresting officer took the tape home with him, a fact that

10   does not particularly please this Court, this Court

11   nonetheless credits the testimony of the officer that

12   alleged that indeed, you did, in fact, brandish this bat at

13   the officer.  And therefore, that claim was not dismissed by

14   this Court, and suggested by your counsel in various

15   submissions, but, in fact, was satisfied to the satisfaction

16   of this Court.

17         This Court also finds that you did, in fact, take

18   steps to obstruct justice by making false statements in your

19   description of your relationship to your machete, and in

20   describing the arrest that you were subjected to by the

21   officers.

22         Admittedly, it was a difficult situation with your

23   relatives in the next room, and they testified with respect

24   to that.  But part of this process is accepting

25   responsibility truthfully for whatever transpired.

1       Given the nature of the offense and your

2   circumstances, the Court find that the sentence of

3   188 months appears to be sufficient, but not greater than

4   necessary to comply with the purposes set forth in 18 United

5   States Code Section 3553(a).

6       The imposition of a fine of up to $250,000 is an

7   option, but it's not going to happen in this case, because

8   the defendant does not have the ability to pay such a fine.

9       The Court imposes three years of supervised

10  release, with the following special conditions:  First, the

11  defendant shall not possess a firearm, ammunition, machetes,

12  knives or other destructive devices.

13      Secondly, the defendant shall not associate with

14  any member or associate of any criminal street gang

15  including, but not limited to MS 13 in person, by mail,

16  telephone, or via electronic communications unless granted

17  permission to do so by the probation officer.

18      Third, the defendant shall participate in an

19  outpatient and/or inpatient drug treatment or alcohol

20  detoxification program approved by the United States

21  Probation Department.  The defendant shall contribute to the

22  cost of such treatment for detoxification programs not

23  exceed an amount determined reasonably by the probation

24  department's sliding scale for substance abuse treatment

25  services.  You shall cooperate in securing any applicable

20

1    third-party payments such as insurance or Medicaid.  The

2    defendant shall disclose all financial information and

3    documents to the probation department to assess his ability

4    to pay.  The defendant shall not consume any alcohol or

5    other intoxicants during and after treatment and

6    detoxification, unless granted a prescription by a licensed

7    physician, and proof of same is provided to the probation

8    department.  And the defendant shall submit to testing

9    during and after treatment to ensure abstinence from drugs

10   and alcohol.

11          And the following search conditions shall apply:

12   The defendant shall submit his person, property, house,

13   residence, vehicle, papers, computers as defined in 18 USC

14   Section 10030(e)(1), other electronic communications or data

15   storage devices or media or office, to a search conducted by

16   a United States probation officer.  Failure to submit to

17   such a search may be grounds for revocation of release.  The

18   defendant shall warn any other occupants, including family

19   members, that the premises may be subjected to searches

20   pursuant to the condition.

21          An officer may conduct the search pursuant to this

22   condition only when reasonable suspicion exists that the

23   defendant has violated a condition of his supervised release

24   and that the areas to be searched contain evidence of this

25   violation.  Any search must be conducted at a reasonable

21

1   time and in a reasonable manner.

2        The defendant shall pay, if not yet paid, the

3   mandatory $100 special assessment that is assessed against

4   all individuals in cases such as this.

5        So, again, the Court hereby sentences you to 188

6   months of imprisonment.  The Court also sentences you to the

7   three-year period of supervised release, with the terms and

8   conditions I just previously stated.  You shall pay the $100

9   special assessment, if you have not yet done so.

10  Furthermore, the Court hereby adopts specifically the

11  factual findings of the presentence investigative report

12  filed on April 11, 2014, and the addendum to the presentence

13  report dated June 16th of 2014.

14       Is there anything else, counsel?

15       MR. TROWEL:  The government moves, your Honor, to

16  dismiss counts, the open remaining counts of Two, Four,

17  Seven, Fourteen, Fifteen and Sixteen.

18       THE COURT:  Any objection?

19       MR. STEIN:  No.

20       THE COURT:  They're dismissed.  Anything else?

21       MR. TROWEL:  Nothing further, your Honor.

22       THE COURT:  Anything else?

23       MR. STEIN:  Judge, yes.  Just in terms of your

24  making a finding that my client obstructed justice because

25  of his suppression motion, the addendum to the probation --

22

1    to the presentence report, and I understand your Honor's

2    entitled under the law as well as the agreement, to arrive

3    at your own calculation, but the Second Circuit decided a

4    case on May 7th, *United States against Pena*, which is cited

5    in the addendum, which I believe does not support any

6    finding by this Court that my client obstructed justice, and

7    you need a lot more than what happened here.

8              So to the extent that your Honor is finding that

9    he obstructed justice, I think that's contrary to the case

10   that's cited in the addendum.  And Mr. Trowel can speak for

11   the government, but I don't think they disagree that based

12   on that case, it's not a proper basis to make that finding.

13             THE COURT:  No, I made that finding at the time I

14   listened to the testimony and read it, and I would simply --

15   and listened to it vary carefully, and I would simply remind

16   you of the terms and conditions of the plea agreement.  I

17   think the sentence is quite modest, in light of the behavior

18   of this defendant.  And certainly, I don't see there are any

19   grounds for appeal.

20             MR. STEIN:  Judge, the plea agreement says nothing

21   about --

22             THE COURT:  The plea agreement says if it's --

23   excuse me.  Excuse me, sir.  Do you know what the plea

24   agreement says?  Do you have it?

25             MR. STEIN:  Of course.

23

1          THE COURT:  You do?

2          MR. STEIN:  Yeah.

3          THE COURT:  What does it say about sentence?

4          MR. STEIN:  I was addressing specifically whether

5    or not it has any consideration of obstruction, based on the

6    supervision hearing.

7          THE COURT:  Okay.  Well, I'm sentencing him to

8    188 months based on the totality in this case, and if you

9    want to violate the plea agreement by seeking to appeal,

10   well, that's up to you.

11         MR. STEIN:  I'm not going to do that, Judge.

12         THE COURT:  I'm just saying I would consider it a

13   violation of the plea agreement, because paragraph four, and

14   let me remind you, counsel, says the defendant agrees not to

15   file an appeal or otherwise challenge by petition pursuant

16   to 28 USC Section 2255 or any other provision, the

17   conviction or sentence in the event the Court imposes a term

18   of imprisonment of 188 months or below.

19         THE DEFENDANT:  Your Honor --

20         THE COURT:  Excuse me.  Excuse me.

21         THE DEFENDANT:  Pardon me.

22         THE COURT:  I will let you know when you can talk.

23   Just listen.  This waiver is binding without regard to the

24   sentencing analysis used by the Court.  The defendant waives

25   all defenses based on the statute of limitations and venue

1    with respect to any prosecution that is not time-barred on

2    the date that this agreement is signed in the event that A,

3    the defendant's conviction is later vacated for any reason;

4    B, the defendant violates this agreement; or C, the

5    defendant's plea is later withdrawn.  The defendant waives

6    any right to additional disclosure from the government in

7    connection with the guilty plea.  The defendant agrees that

8    with respect to all charges referred to in paragraph 1 and

9    5(a), he is not prevailing party within the meaning of the

10   Hyde Amendment, 18 USC Section 3006(a) note and will not

11   violate any claim under that law.  The defendant agrees to

12   pay the special assessment by check payable to the Clerk of

13   the Court at or before sentencing.

14            So that's where we stand.  And if you wish to do

15   something, do it.

16            MR. STEIN:  I said I wasn't, Judge.

17            THE COURT:  I know.  I know.  Anything else?

18            MR. STEIN:  My client wants to further address the

19   Court.

20            THE DEFENDANT:  Your Honor, I just want to ask you

21   if you can help me get me a second opportunity.  I will

22   change.  I don't want to nothing with this gang.  I'm a

23   changed person now.  And, for real, I want to be there for

24   my son.  I grew up without a father and it hurts me that I

25   can't be there for him.  And talking to him on the phone and

25

1    he always -- and I promise him that I would be home one day

2    so I can be with him.  And I hope you'll give me a second

3    chance, your Honor.

4           THE COURT:  Sir, you have been given a sentence of

5    188 months.  Serve them well.  Serve them on honorably, and

6    you will have that opportunity, upon completion of your

7    sentence, to return home a better man.

8           You will be subject to supervised release when you

9    get out on the terms and conditions that I've stated.  That

10   will give you an opportunity to reunite with your son.  Take

11   advantage of it.  Don't misbehave in prison, and avoid the

12   influences of fellow criminals and avoid the influences of

13   MS 13 in particular.  Is there anything else?

14          MR. STEIN:  Yes, Judge.

15          THE COURT:  Yes?

16          MR. STEIN:  I'd ask that you recommend to the

17   Bureau of Prisons that he be designated for Ray Brook.

18          THE COURT:  For?

19          MR. STEIN:  Ray Brook.  It's in Upstate New York.

20          THE COURT:  I will do that.  I will certainly make

21   that recommendation.  Anything else?

22          MR. STEIN:  No.

23          MR. TROWEL:  No, your Honor.

24          THE COURT:  We are adjourned.

25          (Proceedings adjourned at 1:41 p.m.)

1                              * * * * *

# EXHIBIT 6

AL:KMT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -X
ABRAHAM IRAHETA,

                Petitioner,

  - against –                            11 CR 00857 (WFK)

UNITED STATES OF AMERICA,

                Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

Joel M. Stein, Esq. declares under penalty of perjury as follows:

        1.      I am a member of the Criminal Justice Act panel in the Eastern District of New York.  On or about January 5, 2012, pursuant to the Criminal Justice Act, I was appointed by the Court to represent Abraham Iraheta in United States v. Baires, et al., 11 CR 857 (WFK).

        2.      In August and September 2013, I engaged in plea negotiations with the government on behalf of my client.  In the course of plea negotiations, I received plea offers from the government on August 20, 2013 and September 13, 2013.  I promptly communicated these plea offers to my client and discussed both plea offers with him in detail.

        3.      In discussing the plea offers with my client, I discussed the application of the United States Sentencing Guidelines generally and the Guidelines calculations set forth in the plea offers.  I advised my client that, if he pleaded guilty, at sentencing the sentencing judge would calculate the Guidelines and would be required to consider any applicable Guidelines provisions. I advised my client that the sentencing judge would not be

required to impose a sentence within the applicable Guidelines range. I also advised my client that the Guidelines calculations set forth in the plea offers did not bind the Office, the Probation Department or the Court.

4. During plea negotiations with the government, I repeatedly advised my client that only the sentencing judge would determine his sentence and that I could not promise him that he would receive any particular sentence or a sentence within any particular range. I advised my client that this would be the case whether he accepted a plea offer or was convicted following trial.

5. I also explained to my client the appellate waiver provisions in each agreement. I advised Iraheta that, if he were to accept the government's September 13, 2013 plea offer, he would be waiving his right to appeal or otherwise challenge his conviction or his sentence if the Court imposed a sentence of 188 months' imprisonment or below.

6. I did not advise Iraheta that he would receive any particular sentence or a sentence within a particular range. I did not advise Iraheta that he would receive a sentence within the range of 108 to 135 months' imprisonment. I did not advise Iraheta that he would receive a sentence of 135 months' imprisonment or below.

7. On September 16, 2013, Iraheta pleaded guilty to Racketeering in violation of 18 U.S.C. § 1962, pursuant to the government's September 13, 2013 plea offer. On July 24, 2014, the district court sentenced Iraheta principally to a term of imprisonment of 188 months.

Dated: New York, New York
    June 4, 2015

Joel M. Stein, Esq.